## WARNER et al. v. POWELSON et al.

(Circuit Court of Appeals, Second Circuit. February 20, 1917.)

No. 147.

1. PLEDGES ⬳56(5)—SALES OF COLLATERAL—INADEQUACY OF PRICE.
   Where a note of the face value of nearly $17,000 was sold by the pledgee for $10,000, the inadequacy of price is not so great as to justify setting aside the sale, if it was fairly conducted.

2. PLEDGES ⬳36—SALE OF COLLATERAL—GOOD FAITH OF PLEDGEE.
   A creditor of a corporation, holding a note for nearly $17,000 as collateral, offered the note for sale at auction. Others interested in the corporation directed a bank to bid on the note for them up to 99 per cent. of its face value, with interest. Representatives of the bank, who attended the sale to bid for the note and other collateral offered for sale, were prevented from bidding on the note because the creditor insisted that the auctioneer enforce the rule requiring a deposit from unknown persons. Such representatives of the bank were unknown to the auctioneer, but they could in a short time have established their identity, and deposits from banks in good standing were not required; but the creditor insisted that the sale be not postponed, and so the representatives were given no opportunity to bid on the note, which was bought in by the creditor for $10,000. *Held* that, as a pledgee must sell collateral fairly, and a sacrifice is a fraud upon the pledgor, the creditor is under such circumstances liable to the corporation for the sacrifice of the note.
   [Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 92–94.]

3. PLEDGES ⬳36—COLLATERAL—SALE OF.
   Where the conduct of the pledgee in conducting a sale prevented another, whose representatives were present and were authorized to bid up to 99 per cent. of a note's face value, from bidding, and the note, which · was bought in by the pledgee, was sold for only slightly more than half of its face value, the pledgee is, it not appearing whether he had disposed of the note. or at what price. liable for the difference between the price obtained and that which might have been obtained.
   [Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 92–94.]

Appeal from the District Court of the United States for the Southern District of New York.

Suit by Robert L. Warner, Randolph F. Tucker, and Thomas B. Sweeny, individually and as copartners doing business under the firm name of Warner, Tucker & Co., against Wilfred V. N. Powelson and another. From a decree for defendants, complainants appeal. Reversed, with directions to enter decree against the named defendant.

Root, Clark, Buckner & Howland, of New York City (Grenville Clark, Emory R. Buckner, and Robert P. Patterson, all of New York City, of counsel), for appellants.

Simpson, Thacher & Bartlett, of New York City (Graham Sumner, of New York City, of counsel), for appellees.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

WARD, Circuit Judge. This is a suit in equity arising out of the following facts:

There were two companies interested in certain properties in the

state of Tennessee, viz., the Tennessee Eastern Electric Company, the principal company, and the Tennessee Natural Development Company, Incorporated, the construction company. The defendant Powelson was the president and a director of the Development Company, which was indebted to him in the sum of $45,184.72, for which it delivered to him its collateral note, secured by the first mortgage bonds of the Electric Company, from which the coupons had been cut for 18 months in advance, for $20,000; the same bonds, but with coupons uncut, for $30,000; the Electric Company's note for $16,896.77, due July 15, 1914, secured by $33,000 of the Electric Company's bonds, being also security for other obligations of the Electric Company to the Development Company, amounting to $15,000. The collateral note was in the usual form, giving Powelson the right in case of default to sell the collateral at public or private sale and to become himself the purchaser, subject to the following limitation:

"The holder hereof agrees that none of the collateral accompanying this note will be sold without giving Warner, Tucker & Co., of Boston, Mass., an opportunity to bid on same."

It also appeared that the Development Company was owned, one-half by Powelson and one-half by the firm of Warner, Tucker & Co., of Boston. Payment of the Development Company's note having been refused, Powelson gave notice to Warner, Tucker & Co. that he would sell the collateral on February 11, 1914, at the auction rooms of Adrian H. Muller & Son, New York City. A member of the firm of Warner, Tucker & Co. came on to New York to see Powelson, with a view to settling the matter, and the sale was adjourned to February 18th. Warner, Tucker & Co. sent a letter to Redmond & Co., well-known bankers of New York City, asking them to attend the sale and bid up to 68 for the $20,000 lot of bonds, 78 and interest for the $30,000 lot, and up to 99 and interest for the note. In accordance with these instructions Redmond & Co. sent two clerks, who were not personally known to the auctioneer, to attend the sale and bid, without giving them any funds to make a deposit, as this was never required by the auctioneer of them or of any other bankers of New York City in good standing.

The $20,000 lot of bonds was first put up, one of Redmond & Co.'s clerks bidding 50, and on up to 69, at which price they were knocked down to Powelson. There were no other bidders. Upon the $30,000 lot of bonds the bidding began at 55, and ran up between Redmond & Co.'s clerk and Powelson to 77, at which price they were knocked down to Redmond & Co.'s clerk. He gave the auctioneer the name of Warner, Tucker & Co. as purchasers. Not knowing this firm, the auctioneer referred the same to Powelson, who said they were not acceptable. Thereupon the clerk gave them the name of Redmond & Co., with which the auctioneer was quite satisfied, but after conference with Powelson asked whether the bidders had any money to make a deposit. They replied that they had not and that none was ever required of Redmond & Co. They were then asked for their credentials, and showed the auctioneer's clerk the heading of the letter of Warner, Tucker & Co. to Redmond & Co., but refused to allow the body of the letter to

be read, because it contained the bidding instructions. Powelson, being informed by the auctioneer that their rule was to require a deposit from persons unknown to them, told him to carry out the rule. Thereupon the bonds were immediately put up again, and were knocked down to Powelson for 70; the auctioneer refusing to accept any bid from Redmond & Co.'s clerks. While the clerks were trying to communicate with Redmond & Co. with a view to satisfying the auctioneer, the note for $16,896.77 was put up, and Powelson bid $10,000, as he testified, to start the bidding. There being no other bid, it was knocked down to him. Redmond & Co.'s clerks thought that he had bid par. The collateral sold as aforesaid paid the Development Company's note in full and left a balance, for which Powelson accounted, of $1,449.49.

Warner, Tucker & Co. subsequently demanded that Powelson recognize their bid for the $30,000 of bonds at 77, and he did so, from which it resulted that the Development Company recovered $2,100 more than his bid. When they afterwards learned that he had bought the note for $10,000, and not for its face, they demanded that he account to the Development Company for $7,091, the sum they were authorized to pay over his bid, which he declined to do. The Development Company having refused to bring any suit against Powelson, Warner, Tucker & Co., whose partners are citizens of Massachusetts, as stockholders, brought this suit in the right of the company, making it and Powelson defendants, both citizens of New York. The relief prayed for is that the sale of the Electric Company's note may be declared invalid, that Powelson may be treated as still pledgee, and required to account to the Development Company for what he has received, or may receive, in excess of $10,000, the sum bid by him.

The trial judge dismissed the bill for want of equity without writing any opinion. We do not know whether he dismissed it on the ground that there was no jurisdiction in equity on any of the facts, or, if not, on which of the facts testified to he relied. Therefore we must examine the matter de novo.

[1, 2] Assuming that the note was worth par, the price paid was not so inadequate as to justify setting aside the sale, if it were fairly conducted; but a pledgee is bound to sell collateral fairly and to get for the pledgor as much for it as possible. To sacrifice the collateral is a fraud upon the pledgor. We think it quite obvious that Powelson knew that Redmond & Co. were entirely responsible for the bid made by the clerks as their representatives on the $30,000 of bonds, or any bid that they might make on the note. The only objection raised was as to whether they really did represent Redmond & Co. There was, in our opinion, not the least ground for thinking that they were mere pretenders. As the banking house was within a short distance from the auctioneer's and readily communicated with, there was no reason why Powelson should not have suspended the sale until the clerks had an opportunity of proving their authority to act for Redmond & Co. There was no other bidder for the securities, and a short delay would have made no difference whatever. We think it was unfair for the pledgee to suppress the only competition in such a summary way. He cannot transfer the responsibility for what was done to the auctioneers,

or to their rules, because they were his agents, and entirely subject to his orders.

[3] The bill prayed for general relief, which entitles the complainant to any relief consistent with its allegations. The record does not show whether Powelson still holds, or has disposed of, the note in question. If he has disposed of it, no one knows at what price, and a money judgment could not be entered. We think the company is entitled, under the prayer for general relief, to the difference between Powelson's bid of $10,000 and the amount Redmond & Co. were authorized and ready to bid, viz., 99 per cent. of the face of the note, with interest from July 15, 1914.

The decree is reversed, and the court below directed to enter a decree that the defendant Powelson, within a time to be fixed by it, surrender to the Development Company the Electric Company's note for $16,896.77 and the collateral thereto, upon receiving from or on account of the said company 99 per cent. of the note, with interest from July 15, 1914, and in default thereof that he pay to the said company the sum of $7,091, with interest from February 18, 1914, and that he pay to the complainants their costs in either case.