DOROTHY BLATT, PLAINTIFF-RESPONDENT, v. BOARD-
WALK SECURITIES CORPORATION, A CORPORATION,
ETC., DEFENDANT-APPELLANT.

DOROTHY BLATT, PLAINTIFF-CROSS-APPELLANT, v.
BOARDWALK SECURITIES CORPORATION, A CORPO-
RATION, ETC., DEFENDANT-CROSS-RESPONDENT.

Argued October 25, 1934—Decided February 4, 1935.

For the defendant-appellant, *Bourgeois & Coulomb.*

For the plaintiff-respondent and cross-appellant, *Cole & Cole.*

The opinion of the court was delivered by

KAYS, J. This is an appeal from judgments entered in the Atlantic County Circuit Court. The case was tried before the Circuit Court judge and a jury.

The first count was based on a sale of bonds made August 26th, 1926, and was based on a letter signed by the president of the defendant corporation bearing the above date. The second count was based on a sale of bonds made on April 24th, 1928, in accordance with a letter dated on that day signed by the president of the defendant corporation. The jury rendered a verdict in favor of the plaintiff and against the defendant on the first count for the sum of $22,376.97 and on the second count rendered a verdict in favor of the defendant and against the plaintiff of no cause of action. From the judgment entered on the verdict rendered on the first count the defendant appeals here, and from the judgment entered on the verdict rendered on the second count the plaintiff appeals here.

Plaintiff sought to recover by this suit about $49,500 because the defendant corporation refused to repurchase certain bonds which the plaintiff had formerly purchased of the defendant pursuant to two letters. The first letter read as follows:

"August 26, 1926.

Miss Dorothy Blatt,
Dear Madam:

We hereby agree to repurchase from you at any time, all or an part of the following S. W. Straus Co. Bonds at 1% discount, purchased this day as follows." (Then follows a list of the bonds purchased.) The letter was signed "The Boardwalk Securities Corp., Sigmund Ojserkis, President." The second letter read as follows:

"April 24, 1928.

Miss Dorothy Blatt,
Dear Madam:

We will maintain a market of 99 and accrued interest on all Straus Bonds you have purchased from us, and likewise

a market of 99 and accrued interest of $5000. Roosevelt irrigation District 6's purchased from us this day.

Very truly yours,

Sigmund Ojserkis,
President."

A list of the bonds mentioned in this second letter was offered in evidence. The verdict of the jury was as follows:

"On bonds purchased under date of August 26, 1926, $20,000, less one per cent., $200; $19,800, with interest from April 11, 1932, to June 12, 1934—two years, two months and one day, $2576.97—a total of $22,376.97; with the understanding that the bonds revert back to the Boardwalk Securities Corporation.

On the purchase of bonds, 4/24/28, we find she waited an unreasonable time and there is no cause for action."

The action appeared to be brought for the purpose of compelling the defendant to specifically perform a contract alleged to have been made by it with the plaintiff wherein it was claimed that the defendant had agreed to repurchase certain bonds issued by S. W. Straus Company secured by mortgages on property scattered throughout various parts of the country. The Boardwalk Securities Corporation, defendant, was engaged in the purchase and sale of securities.

The first point argued is that the judge erred in refusing to charge the defendant's eighth request which was as follows: "In the case at hand, the principal delegated to Mr. Ojserkis, the President, authority to buy and sell bonds in the usual course of business. This authority would not authorize or empower the president to agree to purchase or repurchase bonds in the future at a stated price." We think there is nothing in this point. There was nothing to go to the jury as far as the authority of the president was concerned. The company was in the business of buying and selling bonds. It sold a number of these bonds to the respondent and it, therefore, appears that when it made an agreement to take the bonds from her at a stated price such an agreement would be considered part of the transaction in inducing her to pur-

chase the same and would be within the presumed power of the president in acting for the company.

The next point urged for reversal is that the judge erred in refusing to charge the jury the fourteenth request of the defendant which read as follows: "If defendant, at the time of the receipt of the letter of April 24th, 1928, regarded the first letter of August 26th, 1926, as no longer binding, and accepted the letter of April 24th, 1928, in lieu and place thereof, and as the only agreement concerning all her Straus bonds, then she was bound to tender all her Straus bonds for repurchase within a reasonable time after April 24th, 1928, and her failure to do so would bar her right of recovery thereunder." We see nothing to this point. There appears to be no such connection between the two letters for there was no adequate proof connecting them. They appear to have been entirely independent transactions, were in writing and each spoke for itself.

The next ground urged for reversal deals with the refusal of the court to charge the defendant's fifteenth, sixteenth and seventeenth requests to charge, which were as follows: "15. Where it becomes the duty of the buyer under an executory contract to purchase, to accept the goods (stock) and take title, such buyer can, by refusing such acceptance, prevent the transfer of the title to him, thus limiting the seller to an action for damages. *Massman* v. *Steiger,* 79 *N. J. L.* 442; *Bixler* v. *Finkle,* 85 *Id.* 77; *Crichfield* v. *Taverna,* 4 *N. J. Mis. R.* 310-315." "16. In an action at law for breach of contract to purchase bonds or other chattels, plaintiff may not lawfully require defendant at the trial to accept a return of the bonds." "17. In an action at law for breach of contract to purchase bonds or other chattels, the remedy for such breach is damages." Appellant argues that the agreement sought to be enforced was an executory agreement under which none of the bonds had been delivered, all the bonds being in the possession of the plaintiff. The attorney of the plaintiff wrote the Boardwalk Securities Corporation a letter in which he stated that the plaintiff had directed him to tender the securities to the Boardwalk Securities Corpo-

ration upon the corporation complying with the terms of the letters addressed to her and that she had instructed such attorney to institute suit. The bonds were also tendered by the attorney of the plaintiff in open court during the trial. This demand for repurchase was refused by the defendant. An action for specific performance of a contract may be applied to enforce a contract dealing with real estate which cannot be duplicated or it may be applied to specific articles of personalty which cannot be duplicated. Repudiating a contract to sell goods or countermanding performance of a contract does not rescind the contract but constitutes a breach of it. The recovery of the purchase price based upon a recision of a contract differs from the enforcement of a contract. The remedy for breach of a contract dealing with personal property is in general a suit for damages to recover the difference between the value set forth under the contract and the value of the personalty in open market. The action in the present case was for the specific performance of the contract to repurchase. Money would be the redress whether in performance of the contract or in the payment of the damages. It was not within the rule respecting real estate or within the rule respecting specific articles of personalty which were not susceptible of duplication or where the parties could not go into the open market and replace the thing agreed upon. Money, of course, can be duplicated and it seems to us that under the facts in this case the jury should have been instructed that the defendant was not compelled to repurchase the securities and that the remedy for such refusal was damages and not the return of the securities. This the court refused to charge the jury and we are of the opinion that by such refusal the court erred. It was for the jury to determine under the circumstances in the case whether or not the plaintiff was entitled to damages by reason of the defendant's refusal to repurchase the bonds as alleged.

The next point urged for reversal is that the judge erred in refusing to instruct the jury relative to the following clause in the letter of August 26th, 1926: "We hereby agree

to repurchase from you at any time," which clause referred to the repurchase of bonds purchased by the plaintiff under said letter which did not mean that the writer obligated the company to purchase indefinitely or in perpetuity but only that he would purchase the bonds within a reasonable time; and also because the court charged, in effect, to the contrary. Respondent claims that this clause in the letter is controlled by the case of *Weinstein* v. *Sheer*, 98 *N. J. L.* 511. The case of Weinstein *v.* Sheer is not a parallel case, for in that case the defendant agreed after an amount of iron had been purchased by the plaintiff it might remain in the defendant's possession and be removed at any time to suit the plaintiff. Under such circumstances the defendant was acting as bailee. In the case now before us the title to the property was in the plaintiff and defendant was not acting as bailee. We think that the effect of the two letters as far as repurchase of the bonds or the maintaining of a market was in effect the same as to when the plaintiff was compelled to act under the agreements in order to enforce the same. It seems to us that the plaintiff was bound to act within a reasonable time and that under all the circumstances of the case it was for the jury to say whether or not the plaintiff did act within a reasonable time in tendering the bonds to the defendant for repurchase according to the terms of the two letters of April 24th, 1928, and of August 26th, 1926. There was proof in the case that a depression had taken place in the bond market several years before the tender was made. The bonds were purchased sometime in August, 1926, and tender was not made until April 11th, 1932, nearly six years thereafter. Whether or not this was a reasonable time was for the jury to determine under all the circumstances of the case. We find no merit in the other points urged for reversal.

For the reasons above stated the judgment under review in favor of the plaintiff and against the defendant for the sum of $22,443.03 is reversed to the end that a *venire de novo* may issue and the judgment in favor of the defendant and against the plaintiff of no cause for action on the second count is affirmed.

Plaintiff's appeal—

*For affirmance*—THE CHIEF JUSTICE, PARKER, BODINE, DONGES, HEHER, VAN BUSKIRK, KAYS, DEAR, WELLS, JJ. 9.

*For reversal*—THE CHANCELLOR, HETFIELD, JJ. 2.

Defendant's appeal—

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, BODINE, DONGES, HEHER, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 11.