WALTER E. EDGE, PLAINTIFF-RESPONDENT, v. BOARD-WALK SECURITIES CORPORATION, DEFENDANT-APPELLANT.

Argued February 11, 1935—Decided May 17, 1935.

For the appellant *Bourgeois & Coulomb.*

For the respondent, *Merritt Lane* and *Walter D. Van Riper.*

The opinion of the court was delivered by

HEHER, J. The subject-matter of this appeal is a judgment in favor of respondent, entered upon a jury verdict, in an action for breach of contract. The gravamen of the complaint was that respondent purchased certain securities from appellant, in consideration of the latter's promise to "repurchase the said bonds from the plaintiff at any time, and pay therefor at the rate of ninety-nine cents (99c) on the dollar, plus the accrued interest thereon;" and that the appellant breached this alleged undertaking of repurchase.

Respondent relies upon a writing, in form a letter. As a result of negotiations with his representative, and in an effort to establish business relations, appellant, under

date of June 22d, 1926, forwarded to Senator Edge a letter enclosing "a list of twenty-five bonds of $10,000 each, well diversified with a good income, for your temporary investment," and containing the following undertaking, which, respondent insists, constituted a binding obligation:

"The bond market at present is too high for permanent investment, as you will note from the enclosed ad. of the National City Co., but I propose to let you have our bonds and, gradually, as the market is more favorable, replace each $10,000 lot of bonds, or such as you may not favor, with issues which will have a good prospect for appreciation and better yield. In such cases we will accept in payment S. W. Straus & Co. bonds which you purchase from us at par and accrued interest. The other Stock Exchange issues we will accept at market and accrued interest. Should you wish to cash in your Straus bonds at any time we will be glad to take them from you at 99 or $10 per bond less than you paid for them and the accrued interest. My idea is if you will give me the time to gradually supply you with a high grade, conservative list of investment bonds, you will be proud of it and have absolute safety with a good income."

Senator Edge thereafter, in reliance upon this undertaking, so he maintains, made the following purchases of securities, viz.: June 28th, 1926, certain S. W. Straus & Company bonds aggregating the principal sum of $80,000; July 7th, 1926, like bonds in the aggregate principal sum of $70,000; on December 17th, 1926, a bond in the sum of $7,000; on January 5th, 1927, one in the sum of $20,000; and on April 12th, 1927, two bonds in the aggregate sum of $12,500. The demand for the repurchase of these securities, at the rate of ninety-nine and accrued interest, was not made upon appellant until April 27th, 1933.

The repurchase price, at the rate stated in the letter, and the accrued interest, amounted to $196,501.93. On the theory of non-performance of the repurchase promise, respondent asked for the difference between that sum and the market value of the securities on the dates when he requested the defendant company to perform that undertaking. There was

evidence tending to prove that the aggregate market value of the securities at these times was $40,570. The verdict was for $150,000, the difference approximately.

Appellant moved for a nonsuit and a direction of a verdict in its favor upon several grounds; and it is now urged that, for some or all of these reasons, the motions were erroneously denied.

The first point urged is that the writing referred to "was not an option, but only an offer to trade," and did not "develop into a contract." The argument, briefly stated, is that it was "at most a mere invitation to treat—a bid for business which required what might be termed a counter-offer on the part of the respondent, and an acceptance of said counter-offer by appellant before a contract resulted." But this claim is not well-founded in fact. Mr. Ojserkis, appellant's president and the officer who handled the transaction in question, conceded that the first lot of securities, aggregating $80,000, were sold "under the terms" of the writing. This alone required a denial of the motions so far as this particular ground was concerned. Assuming, without conceding, that the writing was of the limited character asserted by appellant, the subsequent sale and delivery of securities, under the terms thereof, indubitably constituted a contract. The trial judge, while holding as a matter of law that the letter constituted an offer "to take back from the plaintiff such Straus bonds as he might thereafter purchase from the defendant company, in consideration of such offer," regarded the question of whether there had been an acceptance by respondent of the offer therein contained as one of fact, and submitted it to the jury for determination. He also submitted to the jury, as an issue of fact, the question of whether all the securities made the subject of the complaint had been purchased by appellant "in consideration of the offer to repurchase" contained in the writing. He instructed the jury that the inquiry was whether there was "a mutual understanding and agreement" between the parties that all of the securities were sold subject to the terms of the writing. For the reasons hereinafter stated, it was for the jury to deter-

mine, under all the facts and circumstances, how long the offer in question was to remain open. It should be observed at this point that the letter was not the initial move in an endeavor by appellant to establish business relations with Senator Edge; it followed a conference, with that end in view, between Ojserkis and respondent's business representative.

Secondly, the insistence is that, if the writing be regarded as an offer, there was no acceptance thereof, and therefore the "minds of the parties never met" so as to constitute a contract. The point seems to be that the offer contemplated "an investment of $250,000" by Senator Edge, and that the securities purchased did not equal that sum, and therefore the acceptance did not embrace the offer. But there was evidence tending to show an unconditional acceptance of the terms imposed by the offer. What we have said in relation to the first point is dispositive of this. The proposal is not susceptible of the narrow construction thus placed upon it. Fairly and reasonably construed, there was an offer to sell securities in any amount on the terms indicated; and the appellant submitted a list of bonds described as "well diversified with a good income," for consideration by respondent in the making of a "temporary investment." It was not therein suggested that the bonds thus submitted must be purchased in their entirety. Such a course of dealing is contrary to established practice; and there is nothing in the offer to support that interpretation.

By the motion to direct a verdict, and a request to charge, appellant raised the question of the true interpretation of the proposal which, by the acceptance found as a fact by the jury, ripened into an obligation binding upon the parties. The trial judge gave the phrase in the repurchase clause "at any time" a liberal, entirely unrestricted meaning; he held that it was not to be construed as importing a reasonable time. In this he fell into error. We have lately declared, in an opinion by Judge Kays, that a like clause in a somewhat similar contract obligated the vendee of the securities to exercise the repurchase option within "a reasonable time."

*Blatt* v. *Boardwalk Securities Corp.,* 114 *N. J. L.* 477; 176 *Atl. Rep.* 688. And it was held that, under the circumstances there presented, the question of whether the vendee of the securities exercised the repurchase option within a reasonable time was one to be determined by the jury.

This is a relative and flexible term which is not susceptible of a precise definition that will automatically resolve every case. Its intendment in the particular case necessarily depends upon the context and the attending circumstances. What constitutes a "reasonable time" in the instant case is an implication of fact, and not one of law. The language thus employed by the parties must be construed in the light of the subject-matter and the surrounding circumstances. The inquiry here is to ascertain and effectuate the apparent intention of the parties. What did the parties contemplate by the phrase as so used? This is ordinarily an inference of fact to be drawn by the jury. Compare *Atlantic Pebble Co.* v. *Lehigh Valley Railroad Co.,* 89 *N. J. L.* 336; *Tatterson* v. *Suffolk Manufacturing Co.,* 106 *Mass.* 56. While it is the general rule that the construction of a contract is a question of law for the court, it is predicated upon the absence of an issue of fact. Where the effect of a written instrument depends not merely on its construction and meaning, but upon disputed collateral facts *in pais* and extrinsic circumstances, the inferences of fact to be drawn therefrom are for the jury's determination. *Hope* v. *The Maccabees,* 91 *N. J. L.* 148; *Sommer Faucet Co.* v. *Commercial Casualty Insurance Co.,* 89 *Id.* 693. Where the meaning of a writing is uncertain or ambiguous, and parol evidence is introduced in aid of its interpretation, the question of its meaning should be left to the jury. The jury's function in the construction of documents will arise wherever, in view of the surrounding circumstances and usages offered in evidence, the meaning of the writing is not so clear as to preclude doubt by a reasonable man of its meaning. If the meaning, after taking the parol evidence, if any, into account, is so clear that no reasonable man could reach more than one conclusion as to the meaning of the writing under the circumstances, the court

will properly decide the question of fact for itself, as it may any question of fact which is equally clear. *Williston on Contracts,* § 616; 6 *R. C. L.* 862.

The communication expressing the terms of the offer in the instant case advised Senator Edge that "the bond market at present is too high for permanent investment;" and a list of "Straus" bonds was submitted for "temporary investment." The "reasonable time" contemplated by the parties obviously depended upon market conditions, and, quite possibly, upon other pertinent factors, and is, in general, a question peculiarly within the province of a jury, unless, perchance, upon all the evidence only one conclusion may reasonably be drawn. Compare *Atlantic Pebble Co.* v. *Lehigh Valley Railroad Co., supra; New Jersey School and Church Furniture Co.* v. *Board of Education,* 58 *N. J. L.* 646; *Timlan* v. *Dilworth,* 76 *Id.* 568; *Burr* v. *Adams Express Co.,* 71 *Id.* 263; *Berg* v. *Rapid Motor Vehicle Co.,* 78 *Id.* 724; *Zellers* v. *Delany,* 80 *Id.* 452. It is elemental that the question of what constitutes reasonable time is for the determination of the court when the facts are undisputed and different inferences cannot reasonably be drawn therefrom. *Timlan* v. *Dilworth, supra.*

The other rulings complained of seem to have been predicated upon the trial judge's erroneous construction of the contract in the particular last mentioned, and therefore require no special treatment.

Judgment reversed, and cause remanded for further proceedings in conformity with this opinion.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 13.