ORRIN E. RUNYON, PLAINTIFF IN ERROR, v. WILKINSON,. GADDIS & COMPANY, DEFENDANT IN ERROR.

1. A broker, employed to sell the business and property of a mercantile corporation, by a writing whereby his principal agreed to pay him a commission of five per cent. on the price the principal might agree to receive, when actually received, communicated to a proposing purchaser the principal's offer to sell at a certain price and on certain terms of payment. The proposing purchaser cabled the principal, "Accept 370 half cash half debentures contract mailed." The price and terms thus described substantially agreed with those named in the offer. *Held*—

1. That the cablegram did not constitute an unqualified acceptance of the offer, but one qualified by the contents of the contract therein said to have been mailed.

2. Upon receipt of the contract it was found that it did not contain an agreement to purchase by the proposing purchaser, but only gave him an option to purchase at the price and terms named. The principal thereupon withdrew his offer. *Held*—

2. That upon this evidence there was nothing to submit to a jury, because the broker had not brought the parties together in a completed contract of sale and purchase or produced to his principal a purchaser able and willing to buy at the price and on the terms fixed.

On error to the Supreme Court.

For the plaintiff in error, *Samuel Kalisch.*

For the defendant in error, *Henry Young.*

The opinion of the court was delivered by

MAGIE, J. The assignments of error are based upon a single exception taken to the ruling of the trial judge in granting a nonsuit after the plaintiff below had rested his case.

Runyon, the plaintiff in error, was plaintiff below. His action was brought against a business corporation known as Wilkinson, Gaddis & Company, to recover commissions upon an employment as a broker to sell the business and property of

said corporation. His declaration contained counts upon a written contract of employment and also the common counts. At the trial he produced and proved a writing executed by said corporation and himself, whereby, after reciting that the corporation had placed their business in his hands for sale to English parties seeking investments in this country; the corporation agreed, concerning such sale and the commission thereon, to pay him a commission of five per cent. on the price it might agree to receive, when actually received by it, and he agreed to accept the commission thus payable.

After this proof, it is obvious that the contract furnished the sole ground for recovery in the action. The labor and service which were proved were referable to the contract and gave no right to recover under the common counts. *Hinds* v. *Henry,* 7 *Vroom* 328.

Therefore, to maintain his case, Runyon must establish, by proof sufficient to be submitted to a jury, that he had earned his commissions under the written contract relating thereto. This he could only do by effecting a sale, or at least bringing to his principal a purchaser able and willing to buy at the price and on the terms fixed by it, for his written employment left his employer free to fix both the price and terms of the sale they were desirous to make.

The contention here is that, when the nonsuit was granted, the evidence was sufficient to justify a jury in finding that Runyon had earned his commissions by bringing together Wilkinson, Gaddis & Company and one Seligsen, of London, who did business under the name of Hopcraft, Wilson & Company, and, to quote the brief of counsel, " that a valid contract of sale was entered into between them." If such was the case the nonsuit was error.

It is unnecessary to state the evidence in detail. It will be sufficient to present the facts proved, which show the single point on which the case turns.

Hopcraft, Wilson & Company, on September 17th, 1889, addressed a letter to one Martin, who was working with Runyon to effect this sale, referring to the business in question.

and proposing to take the matter in hand upon the following among other lines, viz., consent must be given to form an English limited liability company; the price of the business, including plant, machinery, buildings, stock, book debts and good-will to be $1,800,000; the capital of the company to be divided into five per cent. debentures, seven per cent. preference shares and ordinary shares; and the vendor was to take the whole issue of debentures, £150,000, also £50,000 of preference shares and the remainder of the price, about £170,000, in cash.

Wilkinson, Gaddis & Company, on October 22d, 1889, wrote to Hopcraft, Wilson & Company, referring to the offer of the latter to form an English limited liability company and accepting the same, but requiring the payment of all the purchase price of $1,800,000, except £150,000 of debentures, to be in cash.

As the minds of the parties did not meet as to the terms of payment proposed, it is obvious that no completed contract arose from these letters. But the letter of October 22d was a proposition which, until withdrawn, Hopcraft, Wilson & Company might accept.

Passing over various unimportant communications by letter or cable, it appears that on March 13th, 1890, Hopcraft, Wilson & Company cabled to one Lawrence, who was also acting with Runyon, a message which, as interpreted, contained an offer of £350,000 for the business in question, and a statement that it was "the most" they would give. This message was communicated to Wilkinson, Gaddis & Company, who, on March 14th, 1890, wrote to Runyon, declining the offer and notifying him that they considered the negotiations at an end.

Notwithstanding this termination of the negotiations, Wilkinson, Gaddis & Company, on March 15th, 1890, addressed a letter to one Veit, who was also interested with Runyon, and they thereby renew their offer to sell at the price of $1,800,000, but fix the terms of payment as one-half in bonds and one-half in cash, and expressly state that the renewed offer is made upon condition that it is accepted and a deposit made

in a New York bank by April 15th, after which date they absolutely withdrew the offer.

On April 11th, 1890, Hopcraft, Wilson & Company cabled to Wilkinson, Gaddis & Company, "Accept 370 half cash half debentures contract mailed." It is conceded that " 370 " means £370,000, which about represents the price named in the letter of March 15th.

It is upon this message, read in connection with the previous letters, that plaintiff in error now contends that he ought to have been permitted to go to the jury upon the question whether or not a completed contract of sale did not arise therefrom. But this contention rests upon an inadmissible construction of the cablegram. It was not an unqualified acceptance of the offer of sale. On the contrary, it was qualified by the connection of the acceptance with the contract which it stated had been mailed. It was an acceptance according to the contents of that contract. Such was the construction given to the message by the trial judge, and in that there was no error.

The contract in question came to Wilkinson, Gaddis & Company on April 18th, 1890. It was signed by Hopcraft, Wilson & Company, and had it contained the stipulations called for by the correspondence between the parties, and a positive agreement to buy, it might well be argued that the broker had earned his commissions. But on examination it appears that it differs in material respects from the propositions and offers of the letters. Nor does it contain any agreement to purchase the property in question. On the contrary, there is a provision that Wilkinson, Gaddis & Company shall sign it and forward it to a London banker, with instructions to deliver it to Hopcraft, Wilson & Company on payment of £2,000 on account of the purchase price, but if they neglect to pay that sum within one week after notice of the arrival of the agreement, then the agreement is to be null and void and neither party shall have any claim upon the other for compensation or damages. There is a further provision that if the £2,000 are paid, but subsequent installments of the purchase price

called for by the contract should not be paid, then that sum is to be retained as liquidated damages and the agreement is to be null and void and neither party is to have any claim against the other.

Counsel could not and did not contend that this contract expressed the terms on which Wilkinson, Gaddis & Company were willing to sell. As the cablegram accepted their terms according to the contents of the contract which did not conform thereto, there was no completed sale. Nor can it be said that Hopcraft, Wilson & Company were willing to buy on those terms. Their contract mailed was designed to secure them an option to purchase and not to bind them to do so.

This was the view taken at the trial, and it properly led to a nonsuit.

The judgment should therefore be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, MAGIE, REED, VAN SYCKEL, BOGERT, BROWN, GREEN, SIMS, SMITH.    11.

*For reversal*—None.