<hr />

## BLOCK v. WALKER.

(Circuit Court of Appeals, Sixth Circuit.    February 4, 1896.)

No. 329.

Brokers—Right to Commissions.

 One W., a distiller, employed B., as broker, to effect a sale of whisky made by him. Nothing was said about B.'s negotiating an option for the sale of the next season's product, but, when B. brought W. and an intending purchaser together, he told W. that the purchaser might demand an option. W. at first refused to give such option, but was finally induced· by B. to do so, and a contract was drawn up for the sale of the whisky ·already made, with an option to the purchaser to buy a large

part of the next season's product. W. paid B. his commission on the sale of the whisky already made, and when the purchaser's option was afterwards exercised, and more whisky, of the next season's manufacture, sold to him, B. demanded commissions thereon. *Held*, that he was not entitled to such commissions.

In Error to the Circuit Court of the United States for the District of Kentucky.

The plaintiff in error, Block, a commission broker, brought this action against the defendant in error, Walker, a distiller, to recover commissions which he claims are due upon a sale of whisky made through his procurement to J. & A. Freiberg, dealers in whisky. The facts are that on the 3d of December, 1891, by a written contract of that date, the defendant in error sold to J. & A. Freiberg 2,500 barrels of whisky, of designated brands, at an agreed price. This contract closed with a provision that, "in consideration of 2,500 barrels purchased of me by J. & A. Freiberg, I hereby give them the option to purchase from me 2,000 barrels of the J. H. McBrayer, to be made during the distilling season of 1893. at 27½ cents per proof gallon, in bond, cash, and also 1,000 barrels of Rock Castle, at 25 cents per proof gallon, in bond, storage, etc. It is, however, understood that this option expires unless accepted by them on or before the first of November, 1892." This contract contains other provisions, not necessary to notice, both in reference to the sale and the option. On the 24th day of October, 1892, they reduced this option to the form of a contract of sale, in writing, similar to that of the original sale, and closed it with another option for 2,000 barrels of the McBrayer whisky, to be distilled in 1894. Under this last contract the Freibergs took, not only the 3,000 barrels of whisky of the 1893 distilling, but 2,000 barrels additional. The plaintiff in error, as the broker negotiating the original contract, was paid by the defendant in error an agreed commission of 25 cents per barrel upon the original sale, and, when the option was completed by acceptance, he claimed an additional commission, first upon 1,500 barrels, and afterwards upon the whole 5,000 barrels of 1893 whiskies. Payment being refused, this suit was brought to recover the commissions. At the trial the court directed a verdict for the defendant, and the case comes here by writ of error from the judgment entered upon that verdict. The other necessary facts will appear in the opinion of the court.

Max B. May, for plaintiff in error.

D. W. Lindsay and Jonas B. Frenkel, for defendant in error.

Before TAFT and LURTON, Circuit Judges, and HAMMOND, J.

HAMMOND, J. (after stating the facts). The assignment of errors, and the argument made in support of it, proceed so entirely upon what we conceive to be a misconception of the nature and character of the contract, that we should first state our determination as to its true nature, and the facts which lead us to that conclusion. The first appearance in the proof of any circumstance relating to the option for which the commissions are claimed is in the testimony of the plaintiff in error himself, when he states that, at some time during the initial conversation between him and the Freibergs about Walker's whisky, he "suggested that the Freibergs should take an option on succeeding crops." It is conceded that, in the dealings between the principal and his broker, nothing whatever had been said between them about any option for future crops, and that, even after Walker came to Cincinnati to carry out the negotiations with the Freibergs, nothing was said between them about such an option, or between Walker and the Freibergs, during all of the protracted conversations about the price

and conditions for the sale of the original whisky. Walker and the Freibergs could not agree about the terms of sale, and separated. The plaintiff in error thereupon urged the defendant in error to accept Freiberg's offer of prices, and, in order to induce him to do so, agreed to abate the ordinary commission of 50 to 25 cents per barrel, to which he finally assented. Up to this time, except by the suggestion already referred to of the plaintiff in error to Freiberg, no mention had been made between any of the parties in relation to any option for future sales. Block had never suggested it to Walker, nor had Walker conceived the idea of employing Block to procure such an option. They returned to Freiberg's office, after the abatement of commissions, with a view of accepting the prices of Freiberg, with a draft of a contract, prepared by Block himself, in which there was still no mention of any option; but, on the way, Block told Walker that "Freiberg might demand an option." When Freiberg read the draft of the contract prepared by Block, he refused to sign it unless an option on the succeeding crop of 1892–93 should be granted, to which Walker refused his assent. Thereupon "Block called Walker aside, and advised him to consent to give an option provided the price for the McBrayer brand was fixed at 27½ cents per gallon, and the price of the private brand at 25 cents per gallon, and provided, further, that a grain clause was inserted in the contract in order to protect Walker against a rise in the grain market, and provided that no less than 3,000 barrels were made under the option." This was an advance in the price of future sales over that which the Freibergs had previously offered. Walker reluctantly consented to this, and the contract already mentioned was executed. This all appears in the proof of plaintiff in error himself. It is further explained by the testimony of Freiberg. Referring to Block, he is asked:

"Q. What was said about any option, if any? A. He said the option was worth something for us. Q. Is it not a fact that he said to you that he wanted to protect you against the next season's crop, and therefore you should take the option? A. That was the idea of it. Q. Did Mr. Block say anything to you about Mr. Walker's agreeing to give you an option at that time? A. Not in the first conversation. Q. Did he say at any time prior to the execution of that contract? A. Yes, sir. Q. What did he say to you? A. He said, by taking the option, it was worth some money to us."

A good deal appears in the record about Block's desire to introduce Walker's whisky in the market at Cincinnati, and about his desire to effect this sale, and to such an extent was he anxious that he was willing to reduce his commissions, which he did. But there is no proof of any circumstance of that nature which is not entirely complete in its application to the accomplishment of the original sale that Block was evidently anxious to make, nor can any of the facts or circumstances be held to relate at all to any desire or effort on his part to induce the Freibergs to accept any option from Walker. The whole proof shows that Walker did not have in contemplation, as a part of his purpose, the giving of this option. He was reluctant to grant it, and there is no sug-

gestion in the proof, as we look at it, of any service to him in the matter of procuring for him, and for his benefit, an option from Freiberg. On the contrary, the proof all shows, conclusively, that this feature of the contract was inserted for the benefit of Freiberg. When it was first mentioned to Walker, he was told by Block that it might be demanded of him,—not that he should offer it or try to get it in his own interest, as would have been the natural language if the purpose were that of the broker or the principal to push a sale of the option. Indeed, in any impartial view of the circumstances, it was a condition precedent imposed by Freiberg upon Walker for his agreement to take the whiskies of 1891–92. Whatever part Block took in bringing about this state of mind on the part of Freiberg was not in furtherance of any such offer of an option by Walker, who was neither desirous of selling options nor employing agents to negotiate them, as clearly appears from his reluctant attitude in the matter, nor of any advantage to him then in contemplation by him or Block. If the latter had any purpose at that time of reaping his commissions for the sale of an option, he concealed it from Walker, and at a time, too, when they were engaged about fixing the commissions. Whether Freiberg's demand was brought about by Block's suggestion or not, it having been determined upon by Freiberg as a condition without which he would not deal with Walker in relation to the main sale, the struggle which Block had with Walker to induce him to give the option, and the suggestion by him of better terms and protective conditions, did not make the transaction any less a condition imposed upon Walker. That which he wanted was a straight sale to Freiberg of the whiskies of 1891–92, and it was such a sale that Block was employed to make.

Now, on this state of facts, one of two results must follow, as it seems to us: Either all that Block did was covered by his commission of 25 cents per barrel of the straight sale, or there is not necessarily to be implied a promise on the part of a principal to pay his broker commissions for inducing himself, unwillingly, to assent to what was to him an undesirable condition attached to a sale which he had employed the broker to make, and which the broker himself was so desirous to effect that he had persuaded the purchaser to secure the condition as an inducement to his purchase. In the New Jersey case of Runyon v. Wilkinson, 31 Atl. 390, it was held that one employed to make a sale could not claim commissions, where that which was procured was only an option to purchase, tendered by the other contracting party. But that position would probably have been met in this case by the proof that was offered that it was customary in this trade for a broker to receive commissions when the option had ripened into a sale, if the case had gone to trial upon that issue, which properly it did not. We do not, therefore, put our judgment on that ground, but rest it upon the ruling made in the case of Harnickell v. Mining Co., 22 N. E. 1079, 117 N. Y. 644. There the defendant company desired to sell its copper ore, and the smelting firm of Pope, Cole & Co. wished only to smelt it. The negotiations carried on

and executed by the plaintiff as the broker resulted in a contract with the smelting company for not only the smelting of the ore, but the purchase of the product. He was paid by the smelting company his usual commissions for negotiating smelting contracts for them, but he claimed also commissions from the defendant company for negotiating a sale of their copper. He was evidently, in a certain sense, the broker for both parties; but, in his employment for the smelting company, he found himself confronted with the determination of the mining company that they would not engage the smelting without the sale of the product. His efforts were to induce his principal—the smelting company—to make the purchase, which he did; and the court held that this position was entirely inconsistent with the idea that he could be the agent of the mining company in effecting a sale of the copper product, and his right to commissions was denied. So we say here that if the plaintiff in error was not the broker of the Freibergs in procuring, for their protection, an option from Walker, he certainly was not Walker's broker, to induce himself to assent to a contract to which he was averse. His labors, as shown by this proof, were confined to a persuasion of Walker, the vendor, to agree to grant the option, and were not exercised in Walker's behalf, to induce Freiberg to take that option, and it is a perversion of this proof to so treat the case. The very language of the written contract itself shows that the option was a part of the consideration and inducement to a purchase by Freiberg of the first whiskies, and not a separate feature, or independent and supplemental sale of future whiskies, nor a single contract for a larger amount. It was a bonus demanded of and granted by Walker to effectuate the main sale. Freiberg declines to say in his testimony whether he would have made the contract without that inducement; but, certainly, Walker's broker should not be allowed to recover commissions for making a sale which, as a matter of fact, he could not have made without yielding to the purchaser that inducement and advantage. In other words, this was a sale of so many thousands of barrels of whisky on the condition that the purchaser should have an option to purchase some other thousands of barrels of whisky in the future, and the broker, knowing all the circumstances at the time, and engaged especially about the business of fixing and regulating his commissions by a definite agreement, neglected to have it specifically understood what compensation he should receive in relation to this feature of the contract as it was made; and, having received his commissions upon a basis of what was actually sold, he now seeks to recover additional commissions for that which was not actually sold, but only optionally bargained for, upon the theory of a quantum meruit, and implied contract to pay these additional commissions.

Much proof was offered and rejected tending to show that, in the trade at Cincinnati in which these parties were engaged, it was customary to make contracts for present sales of whisky, with options attached, like that made in this case, for future sales, and that, when these options had ripened into delivery sales, the

broker would receive of the seller the customary commissions. The petition in this case does not, in terms, base the claim for these commissions upon any such custom or implied contract, but rather counts upon a special employment to make the contract for option, and an implied promise to pay the usual commissions. The proof offered does not even tend to show any such employment, nor that of a general agent, whose contracts, at least upon acceptance and ratification, might be binding. On the contrary, it conclusively shows that the employment was to make a particular sale that was absolute and complete in itself, having no feature of any option about it. In the progress of negotiations, for that kind of sale, this element of a contract for an option was introduced, not primarily at the request or by the wish, or for the benefit and in behalf, of the broker's principal, but of the other side to the contract, and the whole argument in behalf of the broker overlooks that fact. It is a fact applying especially to the circumstances of this case, and arising out of its own peculiarities. The ultimate benefit, if any, to the principal; the fact that he made a profit, if he did; that he did not lose anything, but was so pleased that he gave another option for the next year,— if these be facts, cannot advance the broker's claim for commissions in any just view. This right depends upon the contract, express or implied, for the payment of commissions, and not upon any consideration of profit or loss to the principal. It may be that under other circumstances a broker negotiating for his principal at his request, express or implied, an option sale, or a general sale with an option attached, would be entitled to recover customary commissions; but it is another thing to say that a broker employed to make a particular sale, in which the element of an option for other sales was confessedly not included, is entitled to recover commissions when his principal is forced by the proposed purchaser to add the option for that purchaser's benefit. This being our view of the case, it is not at all necessary to consider the interesting questions of the law of agency in its relation to the employment of factors that have been argued on both sides in support of and against the claim that is set up for this brokerage commission. Neither do we think that the doctrine of the ratification or adoption of an unauthorized contract made by the agent in behalf of his principal is involved in this case. Having found the fact as we do on the proof that the broker, not being specifically authorized to make an option contract in behalf of his principal, submitted to the option as an exaction from him and his principal by a purchaser who demanded it as a part of the consideration for the original sale, the assent of Walker became only an agreement to the exaction, and his conduct cannot be treated as a ratification of the broker's theory that he was making a beneficial option contract for and in behalf of his principal, for which he was entitled, impliedly, to a commission for procuring the purchaser to make such a contract. That which the purchaser imposes as an exaction cannot be thus perverted into a yielding to the persuasive inducements of the broker, for which

alone the broker should be paid. The direction by the trial court of a verdict for the defendant was correct, and the judgment should be affirmed.