JOHNSIE B. BURNHAM, ADMINISTRATRIX OF THE ESTATE OF CHARLES H. CAMPBELL, DECEASED, PLAINTIFF-RESPONDENT, v. THE BORDEN COMPANY, A CORPORATION, DEFENDANT-APPELLANT.

Argued May 17, 1938—Decided October 17, 1938.

436

For the appellant, *Merritt Lane.*

For the respondent, *Arthur T. Vanderbilt.*

The opinion of the court was delivered by

PERSKIE, J.  Appellant, defendant below, and so hereafter referred to, appeals from a judgment of the Supreme Court, in the sum of $113,630.88 in favor of respondent, plaintiff below, and hereinafter referred to as either plaintiff or as Campbell.

The trial of this cause began before then Circuit Court Judge Porter and a jury. But as the case was tried it developed that the admissions in the pleadings together with the proofs adduced raised no dispute as to the facts. Accordingly, the cause was submitted, with apparent consent of both parties, to Judge Porter, as a Supreme Court commissioner, for his consideration and determination. Counsel for defendant invoked Supreme Court rule 113. Thus the trial judge included in the *postea* his findings of fact and conclusions of law. Upon those findings the judgment under review was entered. The propriety of that judgment is challenged. The answer to that challenge depends upon our determination as to whether the learned trial judge correctly construed the agreement which allegedly gave rise to plaintiff's cause of action. Did the defendant, as it is claimed, breach its undertaking with plaintiff? Two agreements are involved; they are rather lengthy and necessarily so: they are comprehensive; they give every indication of having been drawn with great skill and care. We find no difficulty in ascertaining and in giving effect to the intention of the parties as manifested by the language employed and the objects sought to be accomplished. *Corn Exchange National Bank and Trust Co.* v. *Taubel,* 113 *N. J. L.* 605, 609; 175 *Atl. Rep.* 55. There is no necessity to detail all of the provisions of these instruments.

Suffice it presently to state these agreements disclose that on May 14th, 1914, defendant (then known as Borden's Condensed Milk Company) entered into a written agreement with the then National White Cross Milk Company (it has since changed its name to Federal Milk Products Company) which we shall hereafter refer to (as it was referred to below) as the White Cross Company. This company had an authorized capital stock of $10,000,000 of which $8,000,000 was issued and outstanding, the remaining $2,000,000 being treasury stock, no part of which, by agreement, was to be sold, issued or otherwise disposed of by White Cross Company. Campbell owned $3,000,000 par value or three-eighths of the outstanding stock. Defendant under this agreement agreed, among

other things, that, in consideration of the assignment and transfer to it of certain inventions and patent rights by White Cross Company, it would pay to the said White Cross Company royalties under said letters patent upon every pound of powder milk sold by defendant until the expiration date of the letters patent, namely, August 19th, 1930. It was further agreed that the royalty payments should not be less than $20,000 in each and every calendar year beginning with the year ending April 30th, 1916; and that the whole of any royalties paid after October 31st, 1916, by defendant should from time to time when and as the same were received by White Cross Company forthwith be distributed and paid by the latter to its stockholders as dividends less certain deductions not here material. This agreement (generally stated) is characterized by the parties as the "royalty agreement."

On the same day, May 14th, 1914, defendant also entered into a written agreement with Charles H. Campbell, plaintiff's intestate, who was then president of White Cross Company. The preamble to this agreement recites the execution of the "royalty agreement" and the fact that Campbell desired to borrow $150,000 from defendant. In consideration of the premises the provisions as to the loans are then set down. Under these provisions defendant agreed to and did in fact make loans to Campbell in the sum of $150,000. These loans were evidenced by his two promissory notes, one dated May 14th, 1914, for $100,000 and the other dated May 15th, 1915, for $50,000. Both notes contained a reference to this agreement and the agreement also contained a reference to the notes. In order further to secure the payment of these notes Campbell pledged with defendant all of his stock ($3,000,000) in the White Cross Company.

It was further agreed between the parties that the loans to Campbell should *not* bear interest, and should be repaid *only* out of the moneys received as dividends declared from royalties, or in lieu of dividends on the pledged stock; that the moneys received by defendant as dividends, or in lieu of dividends, on the pledged stock should be paid to Campbell, whenever requested by him, until the aggregate of the royalties

paid to the White Cross Company should amount to $400,000. Campbell in turn guaranteed that after this sum of $400,000, as aforesaid had been paid, the total of all dividends thereafter declared and paid upon the pledged stock (out of royalties paid subsequent to the first $400,000 thereof) should at all times amount to three-eighths of all royalties paid to White Cross Company, and in case such total dividends did not at any time amount to at least such three-eighths Campbell should personally pay to defendant a sum equal to such deficiency.

The agreement further provided that when the aggregate royalties paid to the White Cross Company should amount to at least $400,000, thereafter all dividends or moneys in lieu of dividends on the pledged stock should be applied by defendant to the principal of the loans made to Campbell until they should be paid. Campbell in turn again guaranteed that when the aggregate of all royalties paid by defendant to White Cross Company amounted to $800,000, the total dividends declared and paid to defendant which it could apply towards the payments of the loans of Campbell should amount at least to $150,000, and in case the total of such dividends did not amount at least to $150,000, Campbell should personally pay a sum equal to such deficiency. And Campbell further guaranteed defendant that, upon payment of the last royalty, as of August 19th, 1930, the total of all dividends declared and which could be applied towards his loans, should amount to at least three-sixteenths of the aggregate of all royalties paid to White Cross Company; and in case the dividends declared, paid or applied should not then amount to three-sixteenths of all royalties paid he, Campbell, should forthwith personally pay a sum equal to such deficiency.

We desire especially to mark the fact that this agreement also contained the following provision:

"* * * that after the payment of the last royalty due under the royalty agreement as of August 19th, 1930, and after declaration and payment on the pledged stock of the dividend in respect to such last due royalty, and if the said Campbell shall have duly and fully observed and performed

all the terms and conditions of this agreement, *then, notwith-standing that the principal of said loans shall not have been fully paid, this agreement shall. terminate and the Borden Company shall reassign, transfer and deliver the pledged stock to said Campbell and shall redeliver the notes to him.*" (Italics supplied.)

This is the agreement (again generally stated) that is characterized by the parties as the "loan agreement."

During the period covered by the royalty agreement, White Cross Company received $306,082 in royalties from defendant. Out of this sum it paid to defendant, on Campbell's pledged stock, the sum of $78,937.50. In addition thereto, about a year after the death of Campbell (he died on June 3d, 1917) his then personal representative (the estate has had five different administrators since his death) paid to defendant the sum of $1,125. This latter sum (so it is claimed) was paid in pursuance of what has been described as the three-sixteenths clause of the loan agreement. Thus a total of $80,062.50 was received by defendant as dividends and moneys in lieu of dividends.

On February 13th, 1931, the then administrator demanded from defendant the said sum of $80,062.50. Defendant refused to pay same. Thereafter, on September 27th, 1935 (the summons is tested September 19th, 1935), plaintiff commenced this suit for the recovery of $80,062.50 plus interest thereon from February 13th, 1931, the day of the demand therefor.

Plaintiff's right to recovery is based primarily upon the loan agreement, especially the following provisions thereof:

*Section Third, A.* "Accordingly, it is hereby agreed that the sums received by the Borden Company as dividends or in lieu of dividends upon the pledged stock shall be applied by it as follows: A. *Until* the aggregate of the royalties paid to the White Cross Company under the royalty agreement shall amount to the sum of four hundred thousand dollars the Borden Company shall, *whenever thereunto requested by said Campbell, forthwith pay over to him the full amount which it shall have received as dividends or in lieu of divi-*

*dends upon the pledged stock,* including all dividends or *pro rata* part of a dividend declared and *paid out of the said first four hundred thousand dollars of royalty payments."* (Italics supplied.)

And

*Section Third, B.* "When the aggregate royalties paid to the White Cross Company under the royalty agreement shall amount to at least the sum of four hundred thousand dollars ($400,000), *thereupon* and *thereafter* all dividends or sum in lieu of dividends upon the pledged stock (other than such dividends or such *pro rata* part of a dividend as shall have been declared and paid out of the first $400,000 of royalties and be subject to the provisions of Subdivision A of this section) shall, when and as received by Borden Company, be applied by it to the principal of the loans hereunder until the said loans shall have been paid in full, and such payments on account shall be endorsed upon the notes \* \* \*." (Italics supplied.)

Plaintiff claimed since the contingency provided for in section Third, B, never arose (all royalty payments aggregated $306,082) and since Campbell had fully performed the terms and conditions of the loan agreement, then, notwithstanding that the principal of said loans had not been fully paid, plaintiff was nevertheless—under the agreement—entitled to recover.

Defendant denied that plaintiff was entitled to recover any sum from it; it claimed that the right to offset or recoup the dividends and moneys in lieu of dividends which it had received against the loans made to Campbell, and in addition to other defenses raised and later discussed, defendant claimed that it was entitled at least to offset or recoup against plaintiff's demand the sum of $57,390.41. *i. e.,* three-sixteenths of $306,082.19 (total of royalty payments) by virtue of that provision of the loan agreement (part of section Third, B) which provides:

"\* \* \* Said Campbell further agrees, and he guarantees to the Borden Company, that upon the payment of the last royalty due under the royalty agreement as of August 19th,

1930, the total dividends declared and paid to that date on the pledged stock and permitted to be applied by the Borden Company to the principal of the loans pursuant to this Subdivision B shall amount to at least three-sixteenths (3/16) of the aggregate amount of all royalties paid to the White Cross Company under the royalty agreement; and in case such total dividends do not then amount to at least three-sixteenths (3/16) *said Campbell shall forthwith personally pay to* the Borden Company a sum equal to such deficiency. * * *." (Italics supplied.)

The learned trial judge found that plaintiff was entitled to recover from defendant the amount for which she sued. Accordingly, as first indicated, judgment was entered in favor of the plaintiff and against the defendant in the sum of $80,062.50 plus interest thereon from February 13th, 1931, or $113,630.88 in all. Defendant now urges five grounds in support of its contention that the judgment should be reversed.

*First:* The insistment here, as it was below, is that, apart from the conduct of the parties as an aid to the interpretation of the loan agreement, plaintiff is not entitled to recover at all from the defendant since no part of the $150,000 advanced by defendant to plaintiff was repaid. We find no merit in this contention. For, our careful study of the loan agreement impels the conclusion, reached by the court below, that defendant was not entitled to be paid any sum on account of its loans to Campbell until the royalty payments amounted to $400,000; that the loans were to be repaid out of the second $400,000 of royalty payments, it having been contemplated that $800,000 or more would be paid by defendant to White Cross Company in royalties; and that since the royalty payments did not amount to $400,000 (they totaled $306,082) Campbell was entitled to the moneys received by defendant, as dividends or moneys in lieu of dividends, on his pledged stock when the request was made for the same. The clear and unambiguous language employed in the loan agreement, especially section Third, A and B, hereinabove set forth, admit of no other construction.

Defendant argues that such a construction renders the alleged "loan" of $150,000 by it to plaintiff a mere gift. Howsoever this transaction may be termed, it is clear that it did not create the usual debtor-creditor relationship. For example, the notes did not bear interest, repayment was to be out of specific funds from specific sources; the notes referred to the loan agreement and the agreement referred to the notes. Campbell was entitled to the moneys received by defendant on his pledged stock until the royalty payments aggregated $400,000; and finally, as before indicated, defendant was obliged, if Campbell fully performed on his part, to return to him the pledged stock and his notes notwithstanding the fact that the principal of his loans have not been paid. These factors together with all other proofs adduced completely negative the supposition that the transaction here involved was that of an ordinary loan payable under any and all circumstances.

In our opinion the proofs fully support the result reached by the trial judge below.

Defendant makes much of the fact that the construction placed upon the agreement below tends to an absurd result in that a complete forgiveness of the indebtedness results. It is, of course, true that the amounts realized on the patents never reached the expectations of the parties. None the less their agreement was clear and this court does not write a better contract than that which the parties chose to write for themselves. *School Trustees of Trenton* v. *Bennett,* 27 *N. J. L.* 513. That the end result was disappointing and unprofitable is beside the point. The parties reached an agreement. That agreement is free from any taint of illegality. We cannot re-write it.

As a corrollary to its first point, defendant urges that in any event recovery should be limited to the difference between the dividends received by it and three-sixteenths of all the royalties paid. This argument is rested upon the premise that Campbell personally guaranteed to pay any deficiency arising by virtue of the fact that the dividends declared might not equal at least three-sixteenths of all royalties paid. We

think it clear that this guarantee was only to become operative when and if the royalties amounted to $400,000 because until that time, as heretofore indicated, Campbell was entitled to all the dividends. Here again the expectations of the parties exceeded the reality. For clearly the parties contemplated that $800,000 in royalties would be paid since three-sixteenths of that sum amounts to $150,000, the amount which defendant loaned to plaintiff. The fact that the sum anicipated was not realized affords no basis for defendant's contention.

*Second:* Defendant next argues that, by the action of an attorney of a former administrator of Campbell's estate in paying it $1,125 pursuant to the three-sixteenths clause of the loan agreement the parties placed a practical construction upon the contract which this court should follow.

The learned judge rejected this contention, and we, too, think it to be without merit. For, as was pointed out below, the rule of practical construction applies only where the contract is ambiguous—where the intention of the parties is not clear. *Reed* v. *Inhabitants of Trenton*, 80 *N. J. Eq.* 503, 508; 85 *Atl. Rep.* 270. Thus, entirely apart from a consideration of whether an attorney of a former administrator could bind the present plaintiff, we are of the opinion that, since the contract here is clear and unambiguous, the rule of practical construction has no application.

*Third:* Defendant's next contention is that the plaintiff and her predecessors defaulted under the loan agreement and, therefore, the full amount of the notes ($150,000) became due and payable, and was a proper set-off against plaintiff's claim. The alleged default is that White Cross Company failed to declare dividends out of the last two royalty payments, and, thus Campbell breached that provision of the loan agreement in which he guaranteed "that after April 30th, 1916, dividends upon the pledged stock shall be declared and paid not less often than annually."

Here, too, we are of the opinion that the trial judge correctly rejected this contention. For the loan agreement specifically provides (section Fourth) that if Campbell shall default and such default shall have continued for thirty days

the defendant might in its discretion demand payment of the loans. Clearly, under this provision, two steps are necessary; (1) written notice of default, and (2) demand for payment of the loans not before thirty days after the notice of default. Notice of default was given by letter on April 18th, 1932, but no demand for the payment of the loans was made until defendant filed its answer (eighth separate defense) to this suit. By this time plaintiff had already demanded, pursuant to section Third, A, the payment of the moneys which defendant had received. The alleged default urged by defendant in its claim for the principal amount of its loans to Campbell finds no support in the proofs.

*Fourth:* Defendant reiterates its contention, under this point, that plaintiff was in default. In light of what has already been written, no further discussion of this point is necessary.

*Fifth:* Defendant's final point is that the statute of limitations bars recovery in whole or in part; in whole because the statute commenced to run on each annual dividend as it was received by defendant; and if not in whole, at least in part because demand should have been made as to each annual dividend, within a reasonable time, after the receipt thereof by defendant. And it is urged that the reasonable time could not be any longer than the six-year period of limitations.

We are of the opinion that, under the proofs of the case at bar, these contentions ignore the intention of the parties as clearly evidenced by the written memorial of their undertaking. Under that memorial (section Third, A and B) as we have seen, the contracting parties anticipated that the royalties would reach the sum of $800,000. Thus provision was made that defendant would (until the aggregate royalties reached $400,000) pay Campbell the dividends and moneys received in lieu of dividends whenever he requested same. Campbell could, therefore, request the dividends on the first $400,000 but was not required to do so until the expiration date of the agreement, namely, August 19th, 1930. That being so, it follows that the statute of limitations did not begin to run until a reasonable time had elapsed after August

19th, 1930, when the demand should have been made. *Blatt* v. *Boardwalk Securities Corp.,* 114 *N. J. L.* 477; 176 *Atl. Rep.* 688; *Edge* v. *Boardwalk Securities Corp.,* 115 *N. J. L.* 286; 179 *Atl. Rep.* 270; *Cf. Edge* v. *Pancoast,* 120 *N. J. L.* 216; 198 *Atl. Rep.* 825. Plaintiff's demand was made on February 13th, 1931. The trial judge held, as a matter of law, that plaintiff's right of action, under the loan agreement, accrued when that demand was made and that the statute did not begin to run until that time.

We do not find it necessary to express any opinion as to whether the finding by the trial judge carries with it the factual finding that the demand as made was made within a reasonable time. For when, as here, the facts are undisputed and different inference cannot reasonably be drawn from the same facts, the question of what is a reasonable time, was a question for the court. See *Lastowski* v. *Lawnicki,* 115 *N. J. L.* 230 and cases collated on pages 234, 235; 179 *Atl. Rep.* 266.

The court below in concluding that plaintiff's right of action accrued when the demand was made on February 13th, 1931, necessarily found that, as a matter of law, the demand was made within a reasonable time after August 19th, 1930. We concur in that conclusion. Since the instant suit was brought within six years from the date of the demand, the statute of limitations was no bar either in whole or in part to plaintiff's right of action.

Judgment is affirmed, with costs.

*For affirmance*—The Chancellor, Donges, Perskie, Dear, Wells, WolfsKeil, Rafferty, JJ. 7.

*For reversal*—The Chief Justice, Parker, Bodine, Heher, Hetfield, Walker, JJ. 6.