**WALTER KIDDE & CO., Inc., v. WALTON-VIKING CO.**

No. 13137.

Circuit Court of Appeals, Eighth Circuit.

March 11, 1946.

Rehearing Denied April 12, 1946.

Irvin Fane, of Kansas City, Mo. (J. Branton Wallace, of East Orange, N. J., and Ludwick Graves, James H. Ottman, Jacob Brown, and Johnson, Lucas, Graves & Fane, all of Kansas City, Mo., on the brief), for appellant.

Paul R. Stinson, of Kansas City, Mo. (Robert B. Fizzell, Robert M. Zehring, and Stinson, Mag, Thomson, McEvers & Fizzell, all of Kansas City, Mo., on the brief), for appellee.

Before SANBORN, WOODROUGH, and JOHNSEN, Circuit Judges.

SANBORN, Circuit Judge.

By written contract dated May 18, 1941, the plaintiff (appellee) was appointed defendant's (appellant's) agent, for one year, to sell, on commission in a specified territory, fire extinguishing equipment manufactured by defendant. During the year, the plaintiff procured from the Standard Steel Works, of North Kansas City, Missouri, orders for 10,800 fire extinguishers and brackets therefor. These orders were accepted by the defendant. Plaintiff and defendant disagreed as to the amount which the defendant was legally obligated to pay plaintiff as commissions for procuring these orders. Under the plaintiff's interpretation of the agency contract, plaintiff was entitled to commissions based upon the commission schedule of the defendant which was in effect on July 21, 1941, the date when plaintiff procured for the defendant, from the Standard Steel Works, a contract to purchase 750 extinguishers, with the option of purchasing more at the same prices during the ensuing year. Under the defendant's interpretation of the agency contract, the plaintiff's commissions were to be based upon the commission schedules which were in effect at the times the various orders were received by the defendant from the Steel Works.

JOHNSEN, Circuit Judge, dissenting.

———◇———

The plaintiff brought this action, claiming a balance of $54,974.40 due from the defendant on account of commissions. The defendant denied that it was indebted to the plaintiff, and asserted that it had paid the plaintiff $484.07 more in commissions than was due under the agency contract. The case was tried to the court. Jurisdiction was based on diversity of citizenship. The parties agreed that if the court adopted plaintiff's construction of the agency contract, judgment should be entered against the defendant for $53,750.33, with interest from October 25, 1943, and that if the de-

fendant's construction was adopted, the defendant should have judgment against the plaintiff for $484.07, with interest from April 1, 1944. The court entered judgment for the plaintiff, and the defendant has appealed.

By the terms of the agency contract, the applicable law is that of New Jersey. It is not claimed, however, that the law of that state relative to the construction of sales agency contracts differs from the law of other states.

The agency contract of May 18, 1941, between the parties was upon a form prepared by the defendant. The contract provided that:

"The agent shall be allowed as compensation for performance of its obligations hereunder a commission of an amount in accordance with that set forth in the current commission schedule and current split commission policies furnished to agents by the manufacturer, copies of which have been delivered to and receipt of which is herewith acknowledged by the agent."

The current commission schedule referred to provided:

"On portable and wheeled extinguishers, your [agent's] commission will be the difference between the sales price and the following schedule, all in accordance with the general policy on split commissions as outlined in the sales manual.

"Hand Portables

\*　　\*　　\*　　\*　　\*　　\*

"Model 15 .............. $34.30
"Model 20 .............. 41.65"

The last paragraph of the schedule provided:

"The schedules are subject to change without advance notice and we reserve the right to act as final authority on questions of interpretation, or extension of them or to alter them if necessary to meet any unusual conditions not specifically covered."

The contract of the Standard Steel Works, dated July 21, 1941, which the plaintiff procured for the defendant, reads, in part, as follows:

"Annual Purchase Contract
(Indeterminate Quantity)

"Agreement made this 21st day of July 1941, between Walter Kidde & Company, Inc. of Bloomfield, New Jersey, hereinafter referred to as 'Kidde' and Standard Steel Works, hereinafter referred to as the 'Purchaser.'

"Whereas Kidde manufactures assorted sizes and types of Lux Fire Extinguishers, and

"Whereas the Purchaser desires to purchase same at advantageous prices

"It is, therefore, agreed:

"That in consideration of the Purchaser herewith purchasing 750 (not less than 13) of any assortment of size and type at the Purchaser's option of Lux Fire Extinguishing equipments as manufactured and sold by Kidde at·the prices, terms and conditions as described in Form No. 978-T, and

"That the Purchaser shall have the option of purchasing at any time within one (1) year from date hereof any increased number of such Lux Fire Extinguishers, and

"That the sales prices shall be as listed under the respective quantities corresponding to the total quantity shipped to the Purchaser under this contract, and

"That the Purchaser shall derive all benefits from any decline in sales price on any unshipped portion of the contract, \* \* \*."

Under this contract, the price of Model 15 was $43.75, and of Model 20, $54.74.

On July 1, 1941, the defendant issued a new "Schedule of Remuneration" to Agents, effective August 1, 1941, which reduced commissions on sales made after the latter date. On March 12, 1942, the defendant issued another "Schedule of Remuneration," effective March 16, 1942, further reducing agents' commissions on sales made thereafter. In each of these schedules, the clause relating to defendant's right to change or alter commission schedules was included.

Between November 10, 1941, and April 28, 1942, the defendant received orders from Standard Steel Works for 10,800 fire extinguishers and brackets as follows:

1941
Nov. 10, three orders aggregating 1660 Model 20's
1942
March 9, two orders " 1000 Model 15's
" 23, eight orders " 8040 Model 20's
April 28, one order for 100 Model 20's

All of these orders were accepted by the defendant and subsequently filled. They were all war orders for extinguishers and brackets to be installed in equipment manufactured by Standard Steel Works to fulfill war contracts. The total amount re-

ceived by the defendant from Standard Steel Works for the 10,800 extinguishers and brackets was $638,405.

The commissions, as finally computed, allowed and paid to the plaintiff by the defendant upon these orders, were:

| On the orders of | Nov. | 10, 1941, | $ 6,274.80 |
|---|---|---|---|
| " " " " | March | 9, 1942, | 2,940.00 |
| " " " " | March | 23, 1942, | 8,061.67 |
| " " order " | April | 28, 1942, | 74.00 |
| A total of | | | $17,350.47 |

The computation of commissions by the defendant, with some adjustments favorable to plaintiff, was based upon the hypothesis that, under the agency contract, the changes in commission schedules were applicable to orders received after effective dates of the changed schedules. Under the plaintiff's interpretation of the contract, the commissions earned amounted to about $71,000.

 Apparently, the effectiveness of the changed commission schedules with respect to orders procured by the plaintiff in the ordinary course of business was not disputed. The defendant contends that the changed schedules applied also to orders received from a customer who held an "annual purchase contract." The plaintiff contends that when it procured the "annual purchase contract" from the Standard Steel Works, plaintiff earned its commissions upon all purchases subsequently made thereunder, and that to allow the application of the changed schedules to such purchases would be to permit the defendant to change commissions after they had been earned. The weakness of the plaintiff's position is that the "annual purchase contract" obligated the Standard Steel Works to purchase only 750 extinguishers. It could, under its option, purchase more of defendant's extinguishers at the same price if it saw fit to do so, or it could supply its needs from other sources. It was as free to purchase its requirements (in excess of 750 extinguishers) from others as it would have been if the option did not exist. The procuring of the "annual purchase contract" by the plaintiff did nothing more than increase the probability that the Standard Steel Works would purchase from the defendant more than 750 extinguishers during the year the contract was in force. There is nothing in the agency contract or the commission schedule, which was a part of it, to indicate that commissions were to be paid by the defendant to the plaintiff for obtaining options to purchase extinguishers. It is true that the defendant had urged the plaintiff to procure "annual purchase contracts" from customers, but the written agency agreement obligates the defendant to pay commissions upon consummated sales only. "A broker employed to sell or procure a purchaser does not earn his commissions by procuring persons to sign an option to purchase, and not binding them to purchase. Runyon v. Wilkinson, [Gaddis & Co.], 57 N.J.L. 420, 424, 31 A. 390." Stengel v. Sergeant, 74 N.J.Eq. 20, 68 A. 1106, 1111.

In this case the actual sales under the option were not made until the purchase orders were received by the defendant. The defendant was not indebted to the plaintiff for commissions until the orders were received. The plaintiff earned its commission with respect to each purchase order when the order was placed with the defendant. Compare, Ohio Marble Co. v. Byrd, 6 Cir., 65 F.2d 98, 101. Then, and then only, did the plaintiff procure a sale to the Standard Steel Works. This, it seems to us, is the rational construction of the agency contract as applied to purchases under the option held by the Steel Works.

The plaintiff argues that this interpretation is inconsistent with the construction placed upon the agency contract by the parties themselves.

There was evidence tending to show that up to about May 27, 1942, the defendant's policy had been to treat orders received under an "annual purchase contract" as though the orders had been received upon the date the contract was entered into, and to pay or to credit commissions accordingly. The defendant denied the existence of such a policy, and attributed the allowance, and the setting up on its books, of commissions upon that basis to errors made by inexperienced personnel under pressure of a vast expansion due to war. The District Court was not compelled to accept the explanation of the defendant, and might, we think, infer, as it did, that the computation or recomputation by the defendant of plaintiff's commissions after all orders had been received from the Standard Steel Works was due to something more than mere clerical errors.

 It is our understanding, however, that an unambiguous contract is not rendered ambiguous by the practical construction which is placed upon it by the parties. The rule of practical construction is an aid

to the interpretation of a contract which is reasonably susceptible of different interpretations, and may not be used to render the plain meaning of a contract doubtful.[1] The rights of the parties here were fixed by their written agency agreement at the time it was entered into. The subsequent misconstruction or misapplication of the contract by one or both would not alter their contract rights, nor would a miscomputation of commissions preclude the making of a correct recomputation.

■ The plaintiff argues that the defendant did not effectively exercise its right to change commissions. The answer is that the defendant changed the applicable commission schedules, as it had a right to do under the agency contract. The contention that the defendant was shown to have exercised this right in bad faith is, we think, untenable. At the time the agency contract was entered into, this country was not yet at war, although war orders in large volume were being placed. The defendant's products were needed for national defense. The time was rapidly approaching when the products would sell themselves and when the services of salesmen to secure orders were no longer required and no longer valuable. To hold that the defendant could not, in good faith, under the circumstances, change the compensation payable to agents for selling its products, would be unrealistic.

■ The argument that the reduction of the plaintiff's commissions without reducing the price of the extinguishers to the purchaser was unconscionable and resulted in the unjust enrichment of defendant, is, we think, unsound. The defendant was, by the terms of the agency contract, entitled to decide what commissions it was justified in paying sales agents for their services in view of the abnormal conditions which existed. Whether the reduction of commissions to agents was of benefit to the defendant or to the government, is not clear. The defendant was subject to the renegotiation of its war contracts and to war-time taxes upon its profits. The fire extinguishers were, after all, made and owned by the defendant and it was under no legal compulsion to share profits with the plaintiff or other sales agents. The problem here is to determine what commissions, under the agency contract, the plaintiff was entitled to receive and the defendant was required to pay. The parties are bound by their contract, and considerations of profit or loss cannot be invoked to change it. Compare, E. I. Du Pont De Nemours & Co. v. Claiborne-Reno Co., 8 Cir., 64 F.2d 224, 233, 89 A.L.R. 238, and Block v. Walker, 6 Cir., 72 F. 650, 655.

The judgment is reversed, and the case is remanded with directions to enter judgment for the defendant for $484.07 and interest.

JOHNSEN, Circuit Judge (dissenting).

One aspect of the case, apart from the other questions presented, seems to me to require affirmance of the trial court's judgment.

Whether the right to change the amount of plaintiff's commissions was intended to be applicable to orders placed by a customer pursuant to an executed "annual purchase contract," where no reduction in price was made to the customer, or whether in such a situation a change in the commission schedule was intended to be applicable only to annual purchase contracts obtained after the change was put into effect, seems to me to be such an equivocal that any mutual interpretation of the agent's rights made by the parties themselves ought to be accepted as controlling.

The trial court found, and the evidence sufficiently supports the findings, that, up to the time that the last order was received .

---

[1] Philadelphia, W. & B. R. Co. v. Trimble, 10 Wall. 367, 77 U.S. 367, 377, 19 L.Ed. 948; Norton Iron Works v. Standard Slag Co., 6 Cir., 13 F.2d 622, 623, 624; Westinghouse Electric & Mfg. Co. v. Tri-City Radio Electric Supply Co., 8 Cir., 23 F.2d 628, 632; Arkansas Amusement Corporation v. Kempner, 8 Cir., 57 F.2d 466, 476; National Surety Co. v. McGreevy, 8 Cir., 64 F.2d 899, 901; Buder v. New York Trust Co., 2 Cir., 82 F.2d 168, 171, 104 A.L.R. 1035; In re Chicago & E. I. R. Co., 7 Cir., 94 F.2d 296, 299, 300; Stewart v. Lehigh Valley R. Co., 37 N.J.L. 53, 54, 55; Burnham v. Borden Co., 121 N.J.L. 435, 3 A.2d 151, 156; Radio Corporation of America v. Philadelphia Storage Battery Co., 23 Del.Ch. 289, 6 A.2d 329, 340, 341; Illinois Fuel Co. v. Mobile & O. R. Co., 319 Mo. 899, 8 S.W.2d 834, 842; 3 Williston on Contracts, § 623; 12 Am. Jur., Contracts, pages 786, 787, 790, 791; 17 C.J.S., Contracts, § 325, pages 761, 762; Restatement of the Law of Contracts, § 230, page 310.

from the customer on the annual purchase contract that is involved, plaintiff and defendant had both construed the agency contract to mean that the changes made by defendant in plaintiff's commissions were not applicable to these orders; that defendant had set up plaintiff's commissions in its records on the basis of the commission schedule in force at the time the annual purchase contract was obtained (and had in fact made remittances to plaintiff in these amounts as orders were filled and payments were received); and that defendant further had similarly construed and given effect to its other annual purchase contracts.

In this situation, I do not feel that defendant can contend with much force, for the first time as the agency contract and the annual purchase contract are about to expire, that it is entitled to retract its previous ten-months construction, to recast plaintiff's commission account to its own financial advantage, and to apply retrospectively the changed commission schedules. At any rate, I am unable to say that, in not so holding, the trial court was in error.