CHICAGO UNION TRACTION CO. v. STATE BOARD OF EQUALIZATION.

(Circuit Court, S. D. Illinois. November 22, 1901.)

1. TAXATION—CORPORATIONS—CONSTITUTIONALITY OF ILLINOIS STATUTE.

The provisions of the revenue laws of Illinois (Hurd's Rev. St. 1899, p. 1400, c. 120, § 32) for the assessment and taxation of the capital stock of corporations, excepting banks organized under the laws of the state and certain other classes of corporations named, are not in violation of the constitution of the United States, as denying the equal protection of the laws to the corporations to which they apply.

2. SAME—BOARD OF EQUALIZATION—INJUNCTION.

Under the statute of Illinois of 1898 the state board of equalization is constituted the final tribunal for fixing the value of property for the purposes of taxation, and in such action it acts in a quasi judicial capacity, between the state on the one hand and the taxpayer on the other. A federal court is not authorized to grant an injunction against such board, prohibiting it from exercising its statutory powers in the assessment of certain property, on the assumption that it will so administer the law as to deprive the owner of his property without due process of law, in violation of the federal constitution, but it must be conclusively presumed until it has acted that it will proceed fairly and determine the value of the property upon proper evidence.

3. SAME.

A writ of mandamus granted by a state court requiring the board of equalization to value the capital stock of a corporation for the purpose of taxation. as required by the laws of Illinois, taking into consideration the market value of its stock and the total amount of its indebtedness, except for current expenses, cannot be construed to require the board to fix the valuation from such considerations alone, but it is to be assumed that the board is left free to exercise its independent judicial functions and consider all evidence which is pertinent to the question.

4. SAME — SETTING ASIDE ASSESSMENT — REASSESSMENT IN SUBSEQUENT YEAR.

Under Hurd's Rev. St. Ill. 1899, c. 120, §§ 276, 277, which provide that, if property is for any reason not assessed for any year or the tax not paid thereon through any error, it shall be assessed, and the tax which should have been paid thereon, with interest, added to that of a subsequent year, when the assessment made of the capital stock of a corporation for a past year is set aside by the courts as fraudulent it is the duty of the state board of equalization to reassess it as though no previous assessment had been made, although the tax levied on the prior assessment has been paid.

In Equity. On motion for preliminary injunction.

Section 1, article 9, of the constitution of 1870 of Illinois, provides: "The general assembly shall provide such revenue as may be needful by levying a tax, by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property—such value to be ascertained by some person or persons, to be elected or appointed in such manner as the general assembly shall direct, and not otherwise; but the general assembly shall have power to tax  *  *  *  persons or corporations owning or using franchises and privileges, in such manner as it shall from time to time direct by general law, uniform as to the class upon which it operates." Paragraph 4, § 3, c. 120, Ill. St., as amended in 1893, reads as

follows: "The capital stock of all companies and associations now or hereafter created under the laws of this state except those required to be assessed by the local assessors, as hereinafter provided shall be so valued by the state board of equalization as to ascertain and determine respectively, the fair cash value of such capital stock, including the franchise, over and above the assessed value of the tangible property of such company or association; such board shall adopt such rules and principles for ascertaining the fair cash value of such capital stock, as to it may seem equitable and just, and such rules and principles when so adopted, if not inconsistent w'·h this act, shall be as binding and of the same effect as if contained in this act, subject, however, to such change, alteration or amendment as may be found from time to time to be necessary by said board: provided, that in all cases where the tangible property or capital stock of any company or association is assessed under this act, the shares of capital stock of such company or association shall not be assessed or taxed in this state. This clause shall not apply to the capital stock, or shares of capital stock of banks organized under the general banking laws of this state or under any special charter heretofore granted by the legislature of this state: provided, further, that companies and associations organized for purely manufacturing purposes or for the mining and sale of coal, or printing, or for publishing of newspapers, or for the improving and breeding of stock, shall be assessed by the local assessors in like manner as the property of individuals is required to be assessed." Paragraph 1 of said section 3 provides: "All personal property, except as herein otherwise directed, shall be valued at its fair cash value;" and section 108 of the same chapter provides: "The state board of equalization shall assess the capital stock of each company or association, respectively, now or hereafter incorporated under the laws of this state, in the manner hereinbefore in this act provided. The respective assessments so made (other•than of the capital stock of railroad and telegraph companies) shall be certified by the auditor, under direction of said board, to the county clerk of the respective counties in which such companies or associations are located, and said clerk shall extend the taxes for all purposes on the respective amounts so certified the same as may be levied on the other property in such towns, districts, villages or cities ꜱ꜓ which such companies or associations are located." Section 32, c. 120, p. 1400, Hurd's Rev. St. 1899, provides that all corporations and associations incorporated under the laws of this state, other than banks organized under any special or general laws of this state, and the corporations required to be assessed by the local assessors, shall, in addition to other property required to be listed, make out and deliver to the assessor a sworn statement of the amount of their capital stock, setting forth particularly the name and location of the company or association; the amount of capital stock authorized, and the number of shares into which such capital stock is divided; the amount of capital stock paid up; the market value, or, if no market value, then the actual value of the shares of stock; the total amount of all indebtedness except the indebtedness for current expenses, excluding from such expenses the amount paid for the purchase or improvement of property, and the assessed valuation of all its tangible property. Such statement shall be made in conformity to the instruction and upon forms to be prescribed by the auditor of public accounts; and in case of a failure or refusal of any person, officer, company or association, to make such return or statement, it is made the duty of the local assessor to make such return or statement from the best information he can obtain. By section 33 of the same act the assessor is required to return such statement to the county clerk, the county clerk is directed to forward such statement to the auditor of public accounts, and the auditor is required, annually, on the meeting of the state board of equalization, to lay before said board the statements required to be returned to him, and said board is required to value and assess the capital stock of such companies or associations in the manner provided by said act. Sections 276 and 277 of the same act provide: "Section 276. If any real or personal property shall be omitted in the assessment of any year or number of years, or the tax thereon, for which such property was liable, from any cause has not been paid, or if any such property,

by reason of defective description or assessment thereof, shall fail to pay taxes for any year or years, in either case the same, when discovered, shall be listed and assessed by the assessor and placed on the assessment and tax books. The arrearages of tax which might have been assessed, with ten per cent. interest thereon, from the time the same ought to have been paid, shall be charged against such property by the county clerk. It shall be the duty of county clerks to add uncollected personal property tax to the tax of any subsequent year, whenever they may find the person owing such uncollected tax assessed for any subsequent year. Section 277. If the tax or assessment on property liable to taxation is prevented from being collected for any year or years, by reason of any erroneous proceeding or other cause, the amount of such tax or assessment which such property should have paid may be added to the tax on such property for any subsequent year, in separate columns designating the year or years." As provided by paragraph 4, § 3, of the above act, the state board of equalization, in 1873, soon after the adoption of the constitution, adopted rules for the assessment of capital stock and franchises. These rules, as slightly amended in 1889, are as follows: "Resolved, that for the purpose of ascertaining the fair cash value of the capital stock, including the franchise, of all companies or associations now or hereafter created under the laws of this state, and for the assessment of the same, or so much thereof as may be found to be in excess of the assessed or equalized value of the tangible property of such companies and associations, respectively, we, the state board of equalization, hereby adopt the following rules and principles, viz.: First. The market or fair cash value of the shares of capital stock, and the market or fair cash value of the debt, to be determined by reference to the stock exchange or the books of said corporations, and the returns made to the state board, or other means (excluding from such debt the indebtedness for current expenses), shall be combined or added together, and the aggregate amount so ascertained shall be taken and held to be the fair cash value of the capital stock, including the franchise, respectively, of such companies and associations. Second. From the aggregate amount ascertained, as aforesaid, there shall be deducted the aggregate amount of the equalized or assessed valuation of all tangible property, respectively, of such companies and associations (such equalized or assessed valuation in each case, if any, shall be taken and held to be the amount and fair cash value of the capital stock, including the franchise) which this board is required by law to assess, respectively, against companies and associations now or hereafter created under the laws of this state." These rules remained in force until November 22, 1900, when new rules were adopted by the board of equalization, as follows: "Resolved, that for the purpose of ascertaining the fair cash value of the capital stock, including the franchise, of all companies and associations now or hereafter created under the laws of this state, and for the assessment of the same, or so much thereof as may be found to be in excess of the assessed or equalized value of the tangible property of such companies and associations, respectively, we, the state board of equalization, hereby adopt the following rules and principles, viz.: First. The capital stock of each said company or association shall be valued as an entirety, due consideration being given to the following propositions: (a) To the character and duration of the franchise of said company or association; (b) to the amount of the contribution (if any) demanded of and paid by said company or association, under the provisions of any contract or ordinance, to any municipality, as compensation for the use of its franchise privileges in said municipality; (c) the highest and lowest quotations of the shares of stock of said company or association during the twelve months immediately preceding the date of assessment, and the number of shares of stock sold at such quotations; (d) any other fact or condition or circumstance that will assist in arriving at a just, equitable, fair cash value of said capital stock. Second. From the aggregate amount ascertained, as aforesaid, there shall be deducted the aggregate amount of the equalized or assessed valuation of all the tangible property, respectively, of such companies and associations, wherever the same may be located (such equalized or assessed valuation of its Illinois property being taken,

112 F.—39

in each case, as the same may be determined by the equalization or assessment of property by this board), and the amount remaining, in each case, if any, shall be taken and held to be the amount and fair cash value of the capital stock, including the franchise, which this board is required by law to assess, respectively, against companies and associations now or hereafter created under the laws of this state. Third. The above and foregoing are declared to be the only existing rules and principles adopted by this board for its government in the assessment of the capital stock of companies or associations." On October 24, 1901, the supreme court of Illinois, in the case of State Board of Equalization v. People, 191 Ill., at page 528, 61 N. E. 339, held that the new rules so adopted "do not present a correct and lawful method of determining the assessed valuation of the capital stock of corporations, including the franchise, over and above the equalized or assessed valuation of tangible property." They also say, of the old rules: "They are well adapted to produce the result desired, and have not only been uniformly applied by preceding state boards of equalization, but have met the approval of this court, as well as the supreme court of the United States, and the method pointed out therein for assessing capital stock and franchises would be a proper one for the board to follow, even though no rules had ever been formally passed by the board adopting said method." The complainant is a corporation of Illinois, organized in 1899, with $32,-000,000 of capital stock, with power to construct, own, lease, or operate street railroads in Chicago, and in the counties of Cook, Lake, McHenry, Dupage, and Will, in Illinois. Immediately after its incorporation complainant took to itself, by long term leases, all the property and franchises of five street railroad companies, comprising a system of 300 miles of road, for which it pays an annual rental of $2,898,988. The defendants are the members of the state board of equalization. The complainant listed its property for the taxes of 1900, and made sworn return as to the value of its capital stock. The state board thereupon fixed the sum of $600,000 as the assessed value of complainant's capital stock, including the franchise, together with $2,090,630, as the assessed value of its tangible property. The tax on this assessment was paid, amounting to $76,916, and receipt taken therefor. The bill avers that defendants now declare their intention to ignore the capital stock assessment so made by it and make a second and much heavier assessment of the same capital stock. And the answer avers that such intended action will be a lawful assessment of the value of complainant's capital stock, as commanded by writ of mandamus authorized by the supreme court of Illinois. The present hearing is on motion for temporary injunction to restrain such action by the state board of equalization.

Henry Crawford and W. R. Crawford, for complainant.

H. J. Hamlin, Atty. Gen., for defendants.

Before GROSSCUP, Circuit judges, and HUMPHREY, District Judge.

PER CURIAM. The contention of complainant is that the Illinois revenue act is in violation of the fourteenth amendment to the constitution of the United States, in that it denies to complainant the equal protection of the law, and that the administration of that act takes complainant's property without due process of law. The lack of equality is argued from the law itself, because, by the proviso, certain corporations are exempt from assessment, and the lack of uniformity because, as shown by affidavits, the property of complainant is proposed to be taxed at a higher proportion to its value than other taxables of the state. A further contention is that when the board of equalization, in 1900, made an assessment of complainant's capital stock, it had no statutory power, in 1901, after such assessment had been levied and the tax paid, to make a fur-

ther, heavier, or additional assessment.  Where a tax is threatened under a law obnoxious to the constitution of the United States, or so discriminative between taxpayers of the same class as to be obviously the result of fraud, and therefore unequal, within the meaning of the fourteenth amendment to the constitution of the United States, resort may be had to the federal courts in the first instance, where the remedy asked is the restraint of a ministerial act, and especially so where no issues are involved except those that arise under the constitution or laws of the United States.  The case under consideration presents, at the present time, no such situation.  The laws of Illinois have erected, for the purposes of laying its taxes, a certain administrative machinery.  It begins with the local assessor, who fixes in the first instance the assessable value of the largest portion of the property subject to taxation.  It rises then to the local boards of review, whose function is to raise upon notice, or lower, at their own judgment, the respective returns of the assessor.  It culminates in the state board of equalization, whose function, prior to the statute of 1898, was to readjust the several county assessments by raising or lowering, but always with a view to the same general aggregate.  Under the statute of 1898 the authority of this board is enlarged, so that in the general adjustment the aggregate itself may be either raised or lowered.  It will thus be seen that the board of equalization is the last resort in the fixing of taxable values.  It is, and always has been held to be, a quasi judicial body.  It is elected, one member from each congressional district of the state, and it holds in its hands the interests both of the taxpayer and of the state.  These interests invoke the supposed superior information of the board individually, and as a body, upon tax matters, and their judgment and integrity in the application of that information to the questions arising.  In contemplation of law, the board rises to the dignity of an independent assembly or court, in whose keeping lie some of the fundamental interests of the state.  That a different conception of its function may sometime have arisen is due not to any change in the law of its creation, but to the suspicion that certain boards have made alliances with taxpayers, or have acted without that impartiality and independence that ought to characterize every public tribunal.  The revenue act provides that the capital stock of corporations shall be so valued by the state board as to ascertain and determine, respectively, the fair cash value of such capital stock, including the franchise, over and above the assessed value of its tangible property; and that the board shall, in the performance of that duty, adopt such rules and principles for ascertaining the fair cash value of such capital stock as to it (the board) may seem equitable and just.  It is obvious from this section of the statute that the thing to be ascertained—the objective of the investigation—is the fair cash value of the capital stock, including the franchise.  Capital stock means, not the individual shares of stock, or blocks of such shares, but the stock as an entirety,—the beneficial ownership of everything that enters into the property of the corporation.  The object of the state is to reach, for the purposes of taxation, the property, tangible and intangible,

of each corporation; if it be a railroad, its tracks, station houses, terminal facilities, real estate, rolling stock, as also the opportunities, inherent in the corporation and its franchise, of creating earnings; such as the region it taps, the tonnage such region affords, the màrket it reaches, the advantageousness of its terminals, its capacities and prospects,—in short, every consideration that gives it an inherent present or prospective value. It is evident that the problem thus presented to the board is not an easy one. In some states it has been met by fixing upon the gross earnings of the railroad, deducting therefrom the percentage of operating expenses that experience shows to be usual and reasonable, and capitalizing the net earnings, thus resulting at a reasonable ratio, such as 5 or 6 per cent. In other states the result is attained by a fixed percentage upon the gross earnings. But whatever method is adopted the purpose is to arrive approximately at the fair cash value of the property as an entirety, and in consideration of its substantial permanency. The supreme court of Illinois, in the mandamus proceedings, has stated that in arriving at a fair cash value of the capital stock it is proper to take into consideration the indebtedness of such corporation, other than that for current expenses, and the sales upon the stock exchange of the shares of such stock. About this there can be no doubt. The rule has the approval of the supreme court of the United States in the State Railroad Tax Cases, 92 U. S. 604, 23 L. Ed. 669. But the adoption of this suggestion does not make it a fast rule, by which the board is bound to be governed. It was meant, in our opinion, to be pointed out as one of the indicia of value, or, in the language of Justice Miller, a criteria,— not the ultimate measure. Unquestionably the indebtedness is a valuable indicia. It represents what men accustomed to loan money regard the property as permanently worth as a security; and such men, though occasionally, are not frequently, deceived. But while the capital stock is what might be called the equity over and above the indebtedness, it has a stock-market quotation not measured solely by its intrinsic value. The court knows by experience and observation that railroad properties when sold as an entirety, almost without exception, yield nothing to the stockholder, although the stock may have been sold in share lots upon the stock exchange for years previously at advanced figures. The court knows, also, from observation, that these stock quotations are frequently advanced by contending interests for control, or by short interests in the market, such as ran the Northern Pacific within a year to quotations almost tenfold its real value. The court also knows from observation that the speculative public, dealing in stock sales, and making its quotations, are governed largely by the prospect of present dividends, and not by any general conception of permanent earning capacity. These, and other considerations that could be mentioned, make stock quotations an indicia, but an unstable indicia, of the real value of the capital stock as an entirety. In the case of nondividend paying stocks, the above and, perhaps, other considerations are pertinent. In the case of dividend paying stocks, the market quotations of capital stock, averaged for a reasonable period of time, say five

years, and during normal business conditions, would afford a fair measure of value, and should be a strong consideration in fixing the same.   Earning capacity too, for the time being, may be the result of exceptional management or frugality.   The state does not mean to tax this, but only the inherent value of the property itself.   Two sons may inherit from a father, each a quarter section of land of equal value and prospective earning capacity.   At the end of a short period one son is burdened with debt, while the other has earned a large percentage upon the value of his inheritance.   The state in its taxing function neither exempts the improvident son on account of his improvidence from paying his just proportion of the public obligations, nor imposes upon the provident son a penalty for his frugality and faculty of getting on.   The state looks alone to the thing upon which the two sons have exercised their opportunities. With this expression of view respecting the meaning of the law and the function of the board of equalization, we proceed to the mandamus case.

The facts brought to our attention show that in the year 1900 the predecessor of the present board assessed against the companies constituting the present Union Traction Company, on account of its capital stock over and above tangible property, the sum of about $600,000, which would indicate a fair cash value of about $3,000,000. The facts also show that the bonded indebtedness of the several companies assumed by the Union Traction Company, and their capital stock upon which permanent dividends were guarantied by the Union Traction Company, amounted, as near as we can ascertain from the record, to about $60,000,000.   In the proceedings for mandamus in the Sangamon circuit court, these facts were brought to the attention of the court.   No countervailing facts relating to fair cash value of the capital stock were submitted.   Why the case was permitted to go to judgment upon such a showing is not explained.   The probability is that the traction company felt that it could defeat the mandamus proceedings upon other considerations, and did not choose to present the facts that would show the real cash value of its capital stock.   It was found by the circuit court that the discrepancy thus indicated between the assessment spread upon the books and the only criteria of real value brought to the attention of the court was so wide and abrupt as to indicate fraud; and the assessment of 1900 was therefore set aside as fraudulent, and a new assessment commanded.   In this state of proofs the mandamus case was taken to the supreme court, and the findings and ruling of the circuit judge were affirmed.   61 N. E. 339.   It is difficult to see how the ruling could have been different.   On the record presented there was a clear attempt to escape a just proportion of taxation, and the court could not easily have escaped the obligation to set aside so unfair a finding.   This brings us to the present status of the assessment of 1900.   That question is now before the board of equalization as if no assessment had been made, the fraudulent assessment being equal to no assessment.   The duty of the present board, under sections 276, 277, Hurd's Rev. St. 1899, is plain.   That duty is to ascertain the fair cash value of the capital stock as an entirety, and on that

basis ascertain and assess the arrearage of taxes, with 10 per cent. interest thereon, and, in the language of the mandamus, to arrive at such valuation from the best information obtainable, taking into consideration, among other things, the market value of its shares of stock and the total amount of its indebtedness, except for. current expenses, as of April 1,.1900. We do not understand that as a command on the part of the circuit court or the supreme court to make such assessment according to the criteria of the market value alone. The work of the board is not that of the mere mathematician. It implies what the predecessor board disregarded, the market value of the shares as a consideration, but it implies also the inquiry into all other facts and means of knowledge that will bring the board to a fair finding of the fair market value of the capital stock as an entirety. The board is not shorn of its judicial powers, nor is it justified by the mandamus writ in any disregard of its own best information and judgment. It remains still the final reviewing taxing body of the state, to whom the taxpayer and the state may alike look for a fair ascertainment of value according to every pathway that leads to a just result. The bill in this case assumes that the board will not now exercise its independent judicial function, but will confine itself to the mere arithmetic of adding together the indebtedness and stock exchange quotations of the capital stock. We are not at liberty to concur in this assumption. We believe, and are bound to believe, that the board will exercise its function as contemplated by the law. This would exclude the supposed danger of gross discrepancy and the supposed danger of overvaluation. If it transpires that the board of equalization, through pique, or under the lash and spur of some external power, or through personal fear, or moved by any other consideration than the impartial and independent discharge of its own duty, attempts to certify an assessed valuation that in its effect would be a fraud upon any taxpayer, the courts still remain open to the injured taxpayer. The board should be just, as the state wishes it to be, irrespective of the past, and without partiality, and this we will assume until the contrary appears. As to the contention that the law of Illinois and its administration show gross inequality and lack of uniformity, we regard that question settled by the supreme court of the United States in the State Railroad Tax Cases, supra.

The motion for preliminary injunction will be overruled, and the temporary restraining order dissolved.