**CHICAGO & W. I. R. CO. v. CHICAGO & E. I. RY. CO.**

No. 5943.

Circuit Court of Appeals, Seventh Circuit.

Nov. 20, 1936.

Rehearing Denied Dec. 17, 1936.

Mitchell D. Follansbee, Clyde E. Shorey, Robert W. Schupp, and Frederic Barth, all of Chicago, Ill., for appellant.

Charles M. Thomson and Kenneth L. Richmond, Gen. Sol., both of Chicago, Ill., for appellee.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

This is an appeal from a decree of the District Court holding that special assessments which represent the cost of permanent improvements and additions to the property of appellant should not be deemed to be included in the term "working expenses" as those words are used in defining rentals to be paid by appellee according to the terms of certain contracts in evidence. Appellant insists that all the special assessments in question, aggregating some $288,000, even though representing permanent improvements, be treated as operating expense or other than as additions to capital.

Many years ago appellee and four other railroads became associated in obtaining terminal facilities and an entrance into Chicago for their use in common, and made an agreement with appellant whereby the latter agreed to furnish such tracks and terminal facilities and maintain them. The five co-operating companies received leases and eventually became the owners of all the capital stock of the lessor, appellant. Each was required to pay one-fifth of the interest and ultimately one-fifth of the principal of the bonded indebtedness incurred by the lessor in acquiring and improving the leased property.

On November 1, 1882, the rights and liabilities of the parties with regard to assessments, were fixed in a so-called intertenant agreement. It provided that appellant should furnish tracks and terminal facilities to the five tenants for their operation into and out of Chicago, at cost; that appellant should control, manage, and supervise the property used in common by the lessees, and that it should be reimbursed for "working expenses" by the several lessees on a "wheelage basis." The contract provided further that the working expenses should include, among other things, "all taxes and assessments, ordinary and extraordinary, against the property of the Western Indiana Company," but, further, that "the cost of permanent improvements and of additions to the Western Indiana Company property shall not be included in the term 'working expenses' as used in this paragraph."

Concurrently with the execution of the intertenant agreement, a supplemental lease was executed with each of the five companies, granting the use of all the facilities, including the additional structures then being built, for 999 years. This concurrent supplemental lease provided that the lessor should be fully reimbursed for every expenditure, expense, and charge, including "all taxes, assessments and special assessments whatever." Appellant contends that under these two agreements, assessments for all local and public improvements should go into the "working expense" account and be paid for on a user or wheelage basis, while appellee insists that assessments for public improvements of permanent character cannot be included in the term "working expenses," but are in their legal effect, capital expenditures.

For approximately 30 years, the parties, in a practical interpretation of these contracts, have treated local assessments for permanent improvements as a part of the capital cost. The only special assessments charged to working expense have been those

442

in the way of repairs or maintenance of sewers and similar improvements. In 1901, in its classification of accounts, the Interstate Commerce Commission provided that assessments which covered such public improvements as street lights, street paving, street repairs, or sewers, were chargeable to operating expenses, and in 1914 that body made effective its classifications providing that all special assessments for repairing and maintaining such improvements were chargeable to operating expenses, and that all special assessments, whether levied before or after commercial operations had started, for construction of permanent public improvements, were chargeable to specified capital accounts.

Thus we are confronted (1) by the effect of the practical interpretation of the parties; (2) by the compliance, without protest, with classifications of the Interstate Commerce Commission; and (3) by the terms of the written agreements.

The original contract provided that working expenses should include all taxes and assessments, ordinary and extraordinary, but, further, that the cost of permanent improvements and of additions to the property should not be included in the term "working expense." The fair interpretation of these two provisions, it seems to us, is that the parties thereby disclosed an intention to treat as a part of the rentals all special assessments which had to do with making repairs or replacements of pavements and of similar improvements, but to exclude therefrom all special assessments for additions to or permanent improvements of the capital property, including all permanent public improvements.

The words "taxes" and "assessments," when used jointly, ordinarily are treated as sui generis, and that such was the intention in the present agreement seems clear by the provision that the cost of improvements of and of additions to the property should not be included in working expenses. It is commonly held that an agreement covering the payment of "all taxes of every kind," or of "taxes or public impositions" and of "all assessments for taxes for all purposes," do not include special assessments for public improvements which add to the value of the assessed property. Illinois Central Railroad Company v. Decatur, 147 U.S. 190, 13 S.Ct. 293, 37 L.Ed. 132; County of Adams v. City of Quincy, 130 Ill. 566, 573, 578, 22 N. E. 624, 6 L.R.A. 155; Carlyle v. Bartels, 315 Ill. 271, 274, 146 N.E. 192, and Des Moines Union Railway Co. v. Chicago

Great Western Railway Co., 188 Iowa, 1019, 177 N.W. 90, 9 A.L.R. 1557.

When we take into consideration all the provisions of the contract, it is apparent that the parties intended to follow this general rule. The fact that for many years they have complied with regulations of the Interstate Commerce Commission to similar effect and that they so have interpreted their contracts for a great number of years in their intercorporate transactions confirms our belief in the correctness of the decision of the District Court.

There are involved other contracts and trust deeds, and counsel have made some ingenious suggestions as to possible effects of their provisions upon the questions involved. We have examined the record with the contentions of appellant in mind, and we do not find evidence of an intent other than that disclosed in the original and supplemental agreement. Nor do we believe that the supplemental agreement, executed concurrently with the original agreement, included within it any expressed or implied intent to alter or modify the classification of "public assessments" in the original intertenant agreement. The decree is affirmed.