## In re CHICAGO & E. I. RY. CO.

## CHICAGO & W. I. R. CO. v. CHICAGO & E. I. RY. CO.

## No. 6369.

Circuit Court of Appeals, Seventh Circuit.

Feb. 1, 1938.

Mitchell D. Follansbee, Clyde E. Shorey, Robert W. Schupp, and Frederic Barth, all of Chicago, Ill., for appellant.

Charles M. Thomson, of Chicago, Ill. (K. L. Richmond and P. J. Wimsey, both of Chicago, Ill., of counsel), for appellee.

Before EVANS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

The parties here are the same as those in Chicago & Western Indiana R. Co. v. Chicago & Eastern Illinois R. Co., 7 Cir., 86 F.2d 441, and the questions presented arise out of the contracts there before the court. The Western Indiana filed a claim in the reorganization proceedings in the District Court, wherein the Chicago & Eastern Illinois Railway Company is the debtor, for the sum of $279,863.51 for a deficiency in payment of what is claimed to have been due from the Eastern Illinois on capital stock taxes of the claimant for the years 1912 to 1931, inclusive.

During each of those years the state taxing authorities levied against Western Indiana capital stock taxes in addition to those levied upon its physical properties. Until 1926 the Western Indiana submitted each year to each of the five railroad companies owning the capital stock of the Western Indiana in equal proportions, including the Eastern Illinois, a bill for 20 per cent. of such taxes, and each of the companies paid its bills. These payments were in the same proportion as the ownership of the stock. In 1926 a controversy arose, and the auditing committee of the Western Indiana recommended that the basis of payment be changed from that of stock ownership to that of respective proportionate wheelage or user of the physical properties of Western Indiana. The Eastern Illinois protested. The suggestion was submitted to a committee of counsel of the five companies, all of whom, except that of the Eastern Illinois, advised that the proposed change was proper. Thereafter the Western Indiana billed each of the owner companies upon the basis of user of the physical properties. The Eastern Illinois refused to admit the correctness of these bills but continued to pay from 1926 to 1931 upon stock ownership basis. The Western Indiana in its claim sought to recover the

difference between what the Eastern Illinois has paid as holder of 20 per cent. of the stock and what the Western Indiana has assessed against it upon the basis of user. The District Court refused to allow the claim and the appeal by the Western Indiana followed.

As stated in Chicago & Western Indiana R. Co. v. Chicago & Eastern Illinois R. Co., supra, under the intertenant agreement therein mentioned, many years ago the five tenant railroad companies became the owners of the capital stock of the lessor, the Western Indiana, in equal parts, and each received a lease of certain physical properties of the latter company including the terminal facilities in Chicago. The Western Indiana contracted to control, manage and supervise the property used in common by the five lessees and was to be reimbursed for its working expenses by the several lessees on a wheelage basis. The contract provided that such working expenses should include "all taxes and assessments, ordinary and extraordinary, against the property of the Western Indiana" except that portion leased to the Belt Railroad Company and such portion as might be leased exclusively to one of the lessees or some other person; that such working expenses should include also the cost of maintaining the Western Indiana corporate organization and of protecting and defending its property, including suitable insurance, all judgments against the Western Indiana and "all other claims and demands of every name, nature and description for which the Western Indiana might be legally liable," excepting, however, the mortgage debt and such claims and demands as should be paid exclusively by any one of the lessees under their leases. The cost of permanent improvements and additions to the property of the Western Indiana was excluded from the term "working expenses."

The Western Indiana claims that the capital stock tax is included within the term "all taxes and assessments against the property of the Western Indiana"; that it is included within the cost of "maintaining its corporate organization and of protecting and defending its property," and within the words "all other claims and demands of every name, nature and description for which the Western Indiana may be legally liable." The Eastern Illinois insists that the capital stock is not a tax against the property of the Western Indiana and is not included within any other term or provision defining the words "working expense" and that an examination of the supplemental leases and contracts between the parties discloses a positive intent of the parties that no capital stock tax was to be included within the working expenses defined in the intertenant agreement.

The Illinois Revenue Act of 1872, as amended Smith-Hurd Ill.Stats. c. 120, § 1 et seq., and notes, provides for taxation of the physical property of all railroad companies and the method and collection thereof. Section 108, Smith-Hurd Ill.Stats. c. 120, § 1 note, provides that the State Board of Equalization (now Tax Commission) shall assess the capital stock and franchise of Illinois corporations. Section 110, Smith-Hurd Ill.Stats. c. 120, § 1 note, provides that the tax against the capital stock shall be allocated and distributed proportionately among the several counties in like manner as the tax upon the physical properties.

Under the rules governing the state taxing authorities, the value of the "capital stock, including the franchise," is determined by consideration of the market value of outstanding securities and deducting therefrom the assessed value of the tangible property. Chicago Union Traction Co. v. State Board, C.C., 112 F. 607. Under the Illinois authorities it is apportionable in the same manner as the tax upon physical property. Presumably there is no assessment of such capital stock and franchise tax if the assessed physical property values represent the full assessable value of all the railroad property. Obviously, if two railroads serve the same territory and the volume of traffic in freight and passengers upon one is sufficiently great to make of it a prosperous going concern, paying liberal dividends, while the volume of traffic on the other is so inconsiderable as to furnish earnings insufficient to meet fixed charges or to pay any dividends, there is a great difference in the value of both tangible and intangible property. The charter or franchise of a prosperous going railroad, whose stock is earning dividends, obviously has a greater value than that of a company operating at a loss—indeed, it is just as obvious that the franchise of the latter company may be completely valueless. But the additional value of the physical property due to its earning capacity, reflected in dividends and consequent in-

creased security values, is common to and grows out of the sum total of all property of the railroad. Here the lessees received the right to use all the property used in common, including the physical property, the charter, the franchise and all other elements of value to an operating railroad company. These rights were enjoyed in common in the same manner and to the same extent as was all physical property used in common.

We think it clear that the Illinois tax upon capital stock, including franchise, is levied upon the increased value of the physical properties including the value of the intangible property made up of the elements mentioned and perhaps others. But it is none the less a property tax, and though including an intangible property right applies also to and grows out of all property belonging to the corporation. Consequently we can perceive no reason why the plain language of the parties to the effect that the working expenses shall include all taxes against the property of the Western Indiana Company should not include the tax upon the capital stock and franchise.

There is no ambiguity in the language. In this respect the question differs from that before us in Chicago & Western Indiana R. Co. v. Chicago & Eastern Illinois R. Co., supra, in that there we found joined the inconsistent provisions, first, that the working expenses should include all taxes and assessments and, second, that they should not include the cost of betterments and additions to the property. Hence there was an ambiguity with respect to assessments for permanent improvements and betterments to the property. Consequently we gave effect to the practical interpretation of the parties over a term of years. Here there is no such ambiguity.

The further provision that all expense of maintenance of the Western Indiana's corporate organization and of protection of its property should be included within working expense, likewise, it seems to us, evinces an intent to include any expense by way of tax on capital stock or otherwise. If the capital stock tax is not paid, the physical property may be sold in satisfaction of the unpaid tax. Clearly the payment of the tax is essential to protection of the corporate property.

The parties could not have been more explicit in the terms employed in the concluding paragraph defining working expenses. The phrase, "all other claims and demands of every name, nature and description for which the Western Indiana may be legally liable," is all-inclusive. To assert that the tax, in order to be included within working expenses, must be embraced in the word "taxes" in the early part of the paragraph and that it cannot be included in any other term, it seems to us, is to do direct violence to the express agreement of the parties. When these contracting parties provided that all other claims of whatsoever character for which the Western Indiana should be liable were included within working expenses, they must have had some intent in using such an all-inclusive expression. The words are not ambiguous. The court has no right to read into such terms a limitation but must give effect to the contract of the parties.

It is said that the conduct of the parties prior to 1926, whereby they excluded the capital stock tax from working expense, is of material weight in the determination of what the parties intended. As we recognized in Chicago & Western Indiana R. Co. v. Chicago & Eastern Illinois R. Co., supra, in case of ambiguity, the practical construction given by the parties to the contract over a period of years is persuasive. But when the contract is clear, the fact that the parties followed a different plan cannot work a revocation of the plain agreement. "Where there is doubt as to the proper construction of an instrument," the conduct of the parties "is entitled to great consideration. But where its meaning is clear in the eye of the law, the error of the parties cannot control its effect." Philadelphia, W. & B. Railroad Company v. Trimble, 10 Wall. 367, 377, 19 L.Ed. 948. Judge Alschuler, speaking for this court in Illinois Cent. R. Co. v. Indianapolis Union R. Co., 6 F.2d 830, 837, said: "Appellee insists that the fact that the income tax was charged to, and without objection paid by, appellant and the other tenants each year since 1910, indicates a practical construction placed upon the contract in this respect by the parties themselves, and should not be departed from. It seems to us that upon this subject the contract is too plain for construction." The intention of the parties must be found in the language used to express such intention; and if the court finds as a matter of law that the contract is unambiguous, evidence of the intention and acts of the parties plays no part in the decision. The conduct of the parties may fix a meaning to words of doubtful import. It may not change the terms of the con-

tract. Brainard v. New York Central R. R. Co., 242 N.Y. 125, 151 N.E. 152, 45 A.L. R. 751; Restatement of the Law of Contracts, § 235(e).

If by mistake the parties followed a practice in violation of the terms of the agreement, the court should not perpetuate the error. Prall v. Burckhartt, 299 Ill. 19, 132 N.E. 280, 18 A.L.R. 992; Union Tank Line Company v. Wright, 249 U.S. 275, 39 S.Ct. 276, 63 L.Ed. 602; Union Tank Car Co. v. McKnight, 7 Cir., 84 F.2d 421.

Nor do we find in the supplemental agreements any modification of the covenants of the intertenant agreement. In the original leases each lessee covenanted that it would pay to the lessor its wheelage proportion of the expenses incurred or paid by the latter in maintaining its corporate organization, its tracks, passenger depot and terminal facilities, all sums of money that the lessor should become liable to pay by reason of it being the agency of management and all sums resulting from the negligence of any of the employees employed in the supervision and management. It was expressly provided that these sums should be paid, to the end that the lessor might be fully reimbursed for every expenditure for every purpose, including all taxes and assessments upon the tracks, terminal facilities, and other property used in common. The provisions of subsequent leases did not differ substantially, that of 1902 providing that the entire cost of the management, operation, maintenance as well as all taxes, liens, water rents, and assessments should be borne by the lessees in proportion to their several immediate uses. We conclude that the tax upon the capital stock and franchise was within the term "working expenses" and that, therefore, the Eastern Illinois is liable for its proportion thereof upon a wheelage basis.

■ However, the statute of limitations of Illinois, Smith-Hurd Ill.Stats. c. 83, § 17, prohibits actions upon written contracts after ten years. Western Indiana first asserted its claim on April 9, 1928. At that time it was barred from demanding anything accruing prior to April 9, 1918. The statute, relied upon by the Eastern Illinois, defeats all parts of the claim with respect to capital stock taxes down to and including the tax assessed for the year 1916.

The Eastern Illinois has asserted as a special defense also that the Western Indiana should be denied any recovery for the years 1913 to 1921 because taxes for those years were levied and imposed while the Eastern Illinois was in the custody of the United States District Court in an equity receivership, wherein the court having jurisdiction entered an order that all such claims and demands as that involved here, if not paid in due course by the receiver, should be made and presented in the District Court on or before September 30, 1922, and that after that date no such intervention in the cause should be permitted and the rights of any claimants who on or before that date should not have intervened to avail themselves of the remedies provided for their benefit should cease. Notice of the order was given and the Western Indiana did not on or before September 30, 1922, or at any time, present its claim to the District Court as provided in the order. We agree with the Eastern Illinois that the failure of the Western Indiana in this respect barred it with respect to any demands for the years 1913 to 1921, inclusive. The special defenses must prevail as to all of the claims representing demands to and including the year 1921.

The decree of the District Court will be reversed as to that part of the claims which represent demands for the years subsequent to 1921, with directions to proceed in accord with this opinion.